1
2
3
4
5
6

Zachary S. Schumacher (State Bar No. 286898)
SCHUMACHER PC
1901 1st Ave, First Floor
San Diego, CA 92101
(619) 344-0800
zach@schumacher-law.com

Attorneys for Plaintiff
MARVA LEWIS

7
8
9

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16
17
18
19
20
21

MARVA LEWIS, an individual,

        Plaintiff,

vs.

CORECIVIC OF TENNESSEE, LLC, a
Tennessee limited liability company
doing business in the state of California;
CORECIVIC, LLC, a Delaware limited
liability company doing business in the
state of California; CORECIVIC, INC.,
a Maryland corporation doing business
in the state of California; and DOES 1-
20, inclusive,

        Defendants.

Case No.: 3:21-cv-01385-JAH-BGS

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY
JUDGMENT, OR, IN THE
ALTERNATIVE, SUMMARY
ADJUDICATION**

**FED. R. CIV. P. 56**

Date:     September 6, 2023
Time:     2:00pm
Dept.:    Courtroom 13B, 13th Floor
Judge:   Hon. John A. Houston

Mag. Judge:   Hon. Bernard G. Skomal
Action Filed:   August 2, 2021
Trial Date:    None

22
23
24
25
26
27
28

# Table of Contents

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS .................................................................... 2

    A.   Background:  Ms. Lewis was employed by Defendant as a Treatment Counselor. .................................................................. 2

    B.   In April 2019, Ms. Lewis requested a statutorily protected medical leave of absence.  The following day, Defendant opened a workers' compensation claim pertaining to the same leave of absence and medical condition. ................................................ 3

    C.   Defendant was apprised of Ms. Lewis' leave status at all times through its workers' compensation administrator, CorVel Corporation ("CorVel"). .......................................................... 4

    D.   Ms. Lewis retained a workers' compensation attorney who communicated with Defendant and its attorneys, on behalf of Ms. Lewis, for the duration of Ms. Lewis' leave of absence. ............... 4

    E.   Defendant continued to request FMLA paperwork directly from Ms. Lewis despite telling her that all necessary paperwork would come from the workers' compensation doctors. .................. 5

    F.   Ms. Lewis requested a reasonable accommodation in the form of extending her medical leave beyond the FMLA timeframe – up to October 21, 2019. .................................................................. 6

    G.   No later than October 8, 2019, Defendant was informed that Ms. Lewis required medical leave beyond October 21, 2019. ............. 6

    H.   Defendant terminated Ms. Lewis on November 4, 2019, claiming to have no knowledge that she required additional medical leave and claiming job abandonment as the sole reason for her termination. ....................................................................... 7

    I.   Defendant was aware of – but chose to ignore – Ms. Lewis' medical status as addressed in the AME evaluation. ........................... 8

    J.   Defendant never offered or even considered extending Ms. Lewis' leave of absence beyond October 21, 2019. ......................... 9

    K.   Defendant never offered or even considered reassignment as an accommodation, despite being short-staffed in Ms. Lewis' department and having multiple job vacancies for which Ms. Lewis was qualified. ........................................................... 10

    L.   Defendant never considered any accommodations for Ms. Lewis beyond the single extension of her medical leave to October 21, 2019. .......................................................................... 11

M.  Defendant admitted in deposition that accommodating Ms. Lewis would not have caused a hardship...............11

N.  Defendant employs a pattern and practice of discriminating and retaliating against disabled employees at its Boston Avenue facility...........................................12

III.  LEGAL ARGUMENT IN SUPPORT OF PARTIAL SUMMARY JUDGMENT.................................................13

A.  Rule 56 provides for partial summary judgment in favor of a plaintiff...............................................13

B.  Ms. Lewis is entitled to partial summary judgment of the following issues.....................................13

1.  Ms. Lewis was "disabled" and Defendant regarded her as "disabled" within the meaning of the Fair Employment and Housing Act. ........................................14

2.  Ms. Lewis requested an accommodation for her disability......15

3.  Defendant was obligated to engage in a timely, good faith interactive process in response to Ms. Lewis' request for accommodation. ...........................................18

4.  Defendant failed to engage in a timely, good faith interactive process with Ms. Lewis in response to her request for accommodation......................................19

5.  Ms. Lewis was able to perform her job with or without accommodation. ...........................................20

6.  Defendant Failed to Grant Ms. Lewis a Reasonable Accommodation.........................................21

7.  By Failing to Grant Ms. Lewis a Reasonable Accommodation, Defendant Discriminated Against Ms. Lewis Based on her Disability.................................21

8.  Defendant retaliated against Ms. Lewis because she requested an accommodation in the form of extended medical leave. ...........................................22

9.  Defendant's Thirty-First Affirmative Defense Fails Because Granting Ms. Lewis' Request for Accommodation Would Not Have Caused Any Undue Hardship..........................23

10. Ms. Lewis is Entitled to Summary Adjudication of her Wrongful Termination Claim as a Matter of Law....................25

IV.  CONCLUSION .................................................25

**FEDERAL AND STATE CASES**

*Angell v. Peterson Tractor, Inc.*
    21 Cal.App.4th 981, 987 (1994) ................................................................24

*Barnett v. U.S. Air, Inc.*
    228 F.3d 1105, 1116-17 (9th Cir. 2000) ...................................................19

*Cuiellette v. City of Los Angeles*
    194 Cal.App.4th 757, 766 (2011) ..............................................................21

*Hanson v. Lucky Stores, Inc.*
    74 Cal. App. 4th 215, 226 (1999) .............................................................16

*Holmes v. Petrovich Development Co. LLC*
    191 Cal.App.4th 1047, 1063 (2011) ..........................................................22

*Jensen v. Wells Fargo Bank*
    85 Cal. App. 4th 245, 263 (2000) .............................................................15

*Kohler v. Islands Rests., LP*
    280 F.R.D. 560, 564 (S.D. Cal. 2012) ......................................................11

*Matsushita Elec. Indus. v. Zenith Radio Corp.*
    475 U.S. 574, 587 (1986) ..........................................................................10

*Nadaf-Rahrov v. Neiman Marcus Group, Inc.*
    166 Cal.App.4th 952, 986 (2008) .........................................................18, 20

*Nissan Fire & Marien Ins. Co. v. Fritz. Cos.*
    210 F.3d 1099, 1102-1103 (9th Cir. 2000) ...............................................11

*Sandell v. Taylor-Listub, Inc.*
    188 Cal.App.4th 297, 310 (2010) ..............................................................22

*Stoll v. Hartford*, 2006 U.S. Dist. LEXIS 81781, *18 (S.D. Cal. 2006) ............................19

*U.S. Airways, Inc. v. Barnett*
    535 U.S. 391 (2002) ...................................................................................19

*Wallace v. County of Stanislaus*
    245 Cal.App.4th 109, 122 (2016) ..............................................................22

*White v. Nucor Corp.*
    148 F.Supp.3d 1316, 1328 (D. Utah 2015) ...............................................11

*Yanowitz v. L'Oreal USA, Inc.*
    36 Cal.4th 1028, 1042 (2005) ....................................................................23

**FEDERAL STATUTES**

29 U.S.C. § 2611(11) .............................................................................................................3

EEOC Guidance...............................................................................................15, 18, 24, 25

Fed. R. Civ. P. 1 ....................................................................................................................2

Fed. R. Civ. P. 56 ............................................................................................................10, 11

Fed. R. Civ. P. 56(a) .......................................................................................................10, 11

**OTHER**

2 Cal. Code of Regs. § 11064(b) .........................................................................................13

2 Cal. Code Regs. § 11065(d) .......................................................................................12, 13

2 Cal. Code Regs. § 11065(d)(1) ........................................................................................13

2 Cal. Code Regs. § 11065(p) .............................................................................................14

2 Cal. Code Regs. § 11068(a) ......................................................................................24, 25

2 Cal. Code Regs. § 11068(c) .............................................................................................14

2 Cal. Code Regs. § 11069(b) .............................................................................................17

2 Cal. Code Regs. § 11069(c) .............................................................................................18

Gov. Code § 12920 .............................................................................................................12

Gov. Code § 12926(j) .........................................................................................................13

Gov. Code § 12926(j)(1) .....................................................................................................13

Gov. Code § 12926(u) .........................................................................................................25

Gov. Code § 12926.1(b) ......................................................................................................13

Gov. Code § 12926.1(c) ......................................................................................................13

Gov. Code § 12926.1(e) ......................................................................................................15

Gov. Code § 12940(m) ..................................................................................................23, 24

Gov. Code § 12940(n) .........................................................................................................18

# I.    INTRODUCTION

The undisputed facts necessary for this Court's adjudication are as follows: (1) Plaintiff Marva Lewis was employed by Defendant and was an "eligible employee" under the Family and Medical Leave Act ("FMLA"); (2) In April 2019, Ms. Lewis took a protected medical leave of absence; (3) In June 2019, Ms. Lewis requested and was granted an extension of her leave to October 21, 2019; (4) On October 8, 2019, Ms. Lewis requested a second accommodation – to extend her leave for a period of "at least 6 to 8 weeks" to approximately January 2020; (5) On November 4, 2019, while Ms. Lewis was still on medical leave, Defendant terminated her employment, claiming job abandonment as the sole justification; (6) Prior to terminating Ms. Lewis, Defendant did not make any effort to extend her leave beyond October 21, 2019 as an accommodation; (7) Prior to terminating Ms. Lewis, Defendant did not offer, or even consider, reassignment as a possible accommodation; and (8) Multiple of Defendant's own witnesses – including two 30(b)(6) witnesses – testified unequivocally that accommodating Ms. Lewis would not have caused an undue hardship to the Defendant employer.

These material facts, which are not subject to dispute, render many issues in this case appropriate for partial summary judgment under Rule 56 of the Fed. R. Civ. P. Among other things, those issues include the fact(s) that:

A) Ms. Lewis was "disabled" within the meaning of the law;

B) Ms. Lewis took a statutorily *protected* medical leave of absence;

C) Ms. Lewis requested an accommodation in the form of extending her medical leave to approximately December 2019;

D) Defendant failed to provide a reasonable accommodation, because Defendant fired Ms. Lewis instead of extending her medical leave;

E) Defendant never offered, or even considered, reassignment as a potential accommodation;

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MSJ
3:21-cv-01385-JAH-BGS

F) Accommodating Ms. Lewis would not have posed an undue hardship on Defendant; and

G) Defendant terminated Ms. Lewis in retaliation for taking a medical leave of absence.

Importantly, this motion does not seek complete summary judgment.  However, the facts presented herein are such that many issues can and should be resolved by the Court prior to trial, because doing so fits squarely within the purposes of Rule 56 and the Federal Rules of Civil Procedure generally, by, among other things, securing the "just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P., Rule 1.

The partial summary adjudication sought by this motion will greatly reduce the time and expense necessary for the parties, the Court, and the jury to assess responsibility and to determine adequate compensation for the actions committed by this defendant.  Accordingly, for the reasons explained below, Ms. Lewis respectfully requests the Court grant this motion and enter partial summary judgment and/or summary adjudication in her favor.

## II.    STATEMENT OF FACTS

Ms. Lewis respectfully submits the following undisputed facts relevant to the adjudications sought in this motion.  Each fact described below is undisputed and is supported by the evidentiary record in this case.

### A.    Background:  Ms. Lewis was employed by Defendant as a Treatment Counselor.

Defendant is the largest owner of for-profit prison facilities in the United States. Defendant has three facilities in San Diego alone: Boston Avenue, Oceanview, and Otay Mesa.  (Declaration of Zachary S. Schumacher ("ZSS Decl.") ⁋ 19.)  From 2016 to 2019, Ms. Lewis was employed as a Treatment Counselor at Defendant's Boston

- 2 -

Avenue facility, where she counseled inmates with substance abuse problems. (Declaration of Marva Lewis ("Lewis Decl."), ¶ 2.)[1] Ms. Lewis performed well at her job, received numerous accolades for her work, including multiple "employee of the month" awards, and was generally well-liked by both her coworkers and her patients. (Lewis Decl. ¶ 2; Ex.1 9:20-22; Ex. 9.)

### B. In April 2019, Ms. Lewis requested a statutorily protected medical leave of absence.  The following day, Defendant opened a workers' compensation claim pertaining to the same leave of absence and medical condition.

In spring 2019, Ms. Lewis began to suffer from severe depression and anxiety, prompting her to request a medical leave of absence from her employment. (Lewis Decl. ¶ 3.)

On April 22, 2019, Ms. Lewis requested FMLA leave from the HR department at her facility. (Lewis Decl. ¶ 4; Ex. 1 10:21-11:5.)  The next day, HR informed Ms. Lewis that Defendant had opened a workers' compensation ("WC") claim for the same leave of absence/medical condition and instructed Ms. Lewis to visit Defendant's WC doctor for treatment. (Lewis Decl. ¶ 5; Ex. 1 13:4-20.)  HR told Ms. Lewis that all requisite documentation for her leave would be provided by the treating WC doctors, and thus, Ms. Lewis did not need to obtain a medical certification from her own physician. (Ex. 1 22:3-9, 49:12-50:13.)  In light of these instructions, Ms. Lewis understood her paperwork was being handled directly between Defendant's HR department and the WC doctors. (Lewis Decl. ¶ 5.)

//

//

---

[1] At all times relevant to this matter, including Ms. Lewis' termination, CoreCivic was an "employer" for purposes of California's Fair Employment and Housing Act ("FEHA").  (ZSS Dec ¶ 9, [Defendant's Response to Plaintiff's Requests for Admission ("RFA") No. 2].)

On April 24, 2019, Defendant sent Ms. Lewis a notice stating, "Your FMLA leave request is approved" due to "your own serious health condition"[2]. (Lewis Decl. ¶ 6; Ex. 10.)   The notice also suggested that Ms. Lewis did not need to provide a medical certification in support of FMLA leave – presumably because Defendant would receive that information directly from its WC doctor(s).  (Lewis Decl. ¶ 6.)

### C. Defendant was apprised of Ms. Lewis' leave status at all times through its workers' compensation administrator, CorVel Corporation ("CorVel").

For the duration of Ms. Lewis' leave of absence – up to and through the date of her termination – Defendant employed a third-party administrator, CorVel, to manage all its WC claims. (Ex. 1 87:17-19, 100:7-101:10; Declaration of Michael Diamond ("MD Decl.") ¶ 5, 6; Lewis Decl. ¶ 8.)  CorVel represented Defendant with regard to Ms. Lewis' WC claim, and received copies of all medical/treatment records and all doctors' recommendations related to Ms. Lewis' leave of absence. (Ex. 1 100:24-101:10.)  In addition, Defendant's HR department received copies of all paperwork related to Ms. Lewis' WC claim. (Ex. 1 35:12-21.)

### D. Ms. Lewis retained a workers' compensation attorney who communicated with Defendant and its attorneys, on behalf of Ms. Lewis, for the duration of Ms. Lewis' leave of absence.

After learning that her leave of absence was being re-classified as a workers' compensation claim, Ms. Lewis retained an attorney, Michael Diamond, to represent her interests in the WC matter. (Lewis Decl. ¶ 7; MD Decl. ¶ 3.)  On May 2, 2019, Mr. Diamond notified Defendant of his representation and instructed Defendant to direct all communication to his office. (MD Decl. ¶ 5.)

On June 27, 2019, Mr. Diamond received a letter of representation from

---

[2] To qualify for a leave of absence under the FMLA, the employee must suffer from a "serious health condition." 29 U.S.C. § 2611(11). Here, there is no dispute that Ms. Lewis qualified under FMLA.

Defendant's attorney, Stacy Bickler, stating that Bickler represented both Defendant and CorVel in the WC matter. (MD Decl. ℙ 7.)  Among other things, the letter also demanded copies of all medical records related to Ms. Lewis' leave of absence and medical condition. (MD Decl. ℙ 7.)

**E.    Defendant continued to request FMLA paperwork directly from Ms. Lewis despite telling her that all necessary paperwork would come from the workers' compensation doctors.**

On or about May 15, 2019, Defendant began sending letters to Ms. Lewis' home regarding her "FMLA leave" eligibility. (Lewis Decl. ℙ 9.)  Ms. Lewis was confused by the letters because, she alleges, when HR informed her that her leave would be treated as a WC claim, they also instructed her to disregard any correspondence related to FMLA. (Lewis Decl. ℙ 9.)  The reason proffered by HR, according to Ms. Lewis, was that HR had originally entered the leave into their records as FMLA, triggering a series of mailings to Ms. Lewis under FMLA protocol; but, they said, because Defendant reclassified the leave as a WC claim, Ms. Lewis could ignore the FMLA paperwork altogether.  It was therefore Ms. Lewis' understanding that she did not need to respond to Defendant's letters about anything pertaining to FMLA, because it was all being handled between Defendant and the WC doctors.  (Lewis Decl. ℙ 9.)

Ms. Lewis also addressed this issue in-person numerous times.  Because she was not receiving a paycheck during her leave, she was required to visit Defendant's HR department to make bi-weekly health insurance payments. (Lewis Decl. ℙ10, 11.) Ms. Lewis alleges that during these visits, she always asked about the FMLA letters but could never get a straight answer from HR.  Initially, they told her not to worry about the FMLA letters, because the leave was classified as WC leave.  But over the course of weeks, and then months, HR could not explain whether the letters required her attention or not.  At all times, however, Ms. Lewis maintained that she was on WC leave and that any information regarding her leave status, including doctors'

recommendations and/or return-to-work dates, could be determined by reviewing her WC file.  (Lewis Decl. ¶ 10.)  Furthermore, it is indisputable that Defendant's WC file <u>did</u> contain all relevant information pertaining to the status of Ms. Lewis' medical leave status and return-to-work date.  (Lewis Decl. ¶ 10; MD Decl. ¶ 6-8, 12-15.)

**F.    Ms. Lewis requested a reasonable accommodation in the form of extending her medical leave beyond the FMLA timeframe – up to October 21, 2019.**

In a doctor's note dated June 21, 2019, prior to the expiration of her FMLA leave[3], Ms. Lewis' treating doctor certified that "*<u>Ms. Lewis is not expected to return to work before 10/21/19.</u>*" (Ex. 12 (emphasis added).)  On that basis, Defendant extended Ms. Lewis' leave of absence to October 21, 2019.  (Ex. 1 180:1-4; Lewis Decl. ¶ 12.)

**G.    No later than October 8, 2019, Defendant was informed that Ms. Lewis required medical leave beyond October 21, 2019.**

On September 12, 2019, Ms. Lewis was evaluated by a clinical psychologist for an Agreed Medical Evaluation ("AME") related to the ongoing WC claim.  Defendant was not only aware of, but actually scheduled, the AME evaluation.  (MD Decl. ¶ 10.)

On October 8, 2019, the AME doctor delivered a 44-page report (Ex. 19), which made the following conclusions about Ms. Lewis' disability/leave status:

> "My opinion is that Ms. Lewis has been Temporarily Totally Disabled [("TTD")] on a psychological basis from the time that she left work at the end of the day on 04/20/19 through the present time.  ***I expect that period of TTD to last at least another 6 to 8 weeks***…"

> (Ex. 19, p.40 (emphasis added).)

*//*

---

[3] Notably, based on Ms. Lewis' leave of absence started on April 22, 2019, her 12 weeks of protected leave under the FMLA exhausted on July 15, 2019.  Therefore, for any additional time off due to her disability, Ms. Lewis required an accommodation in the form of an extension of her leave.  Accordingly, by submitting her request for an extension of her leave of absence up to October 21, 2019, Ms. Lewis was requesting an accommodation in the form of additional medical leave.

"***I expect that Ms. Lewis will be able to return to her usual and customary occupation for the employer in the future*** at another location where she is not under the supervision of Ms. Murphy. … I note this likelihood in hopes that this forward-looking statement will help the employer to assist Ms. Lewis in returning to work for the employer in a manner which facilitates her successful reintegration into the employment setting."

(Ex. 19, p.40-41 (emphasis added).)

"I expect that Ms. Lewis will require further consideration of psychiatric medication for a number of additional months as chosen by her treating psychiatrist."

(Ex. 19, p.41.)

"My opinion is that Ms. Lewis requires additional psychotherapy … for at least the next 2 to 3 months, hopefully during which time she can further recover."

(Ex. 19, p.41; also see MD Decl. ℙ 11.)

Based on the AME report, which Defendant received, there is no question that as of October 8, 2019, Ms. Lewis was deemed temporarily totally disabled and would not be cleared to return to work by October 21, 2019. (MD Decl. ℙ 12.)  There is also no question that Defendant was privy to this information, because Defendant was a party to the WC claim, Defendant coordinated the AME evaluation, and the AME report was served on Defendant and Ms. Lewis simultaneously.  (MD Decl. ℙ 12-15.)

### H. Defendant terminated Ms. Lewis on November 4, 2019, claiming to have no knowledge that she required additional medical leave and claiming job abandonment as the sole reason for her termination.

In a letter dated November 4, 2019, Defendant terminated Ms. Lewis' employment via a mailed letter, citing the following justification:

You have not returned to work, and you have not contacted us. Since we have not heard from you, *we must assume that you do not intend to return to work*. Accordingly, your employment with [Defendant] is terminated effective November 4, 2019.  (Emphasis added.)

(Ex. 14.)

//

- 7 -

Defendant's 30(b)(6) witness, Andrea Cooper, testified that there was no other reason to terminate Ms. Lewis' employment:

> Q: Just so I have a clear understanding, what is your understanding as to why Marva Lewis was terminated on November, 4, 2019?
>
> A: She never provided -- well, she never returned to work.  And she never provided any documentation as to why she couldn't return to work or what she needed to return to work.  She just stopped communicating.
>
> (Ex. 4 32:2-8.)
>
> Q: Other than the reasons you just stated, are there any other reasons you're aware of as to why Marva Lewis was terminated?
>
> A: No.
>
> (Ex. 4 32:17-20.)
>
> Q: And CoreCivic's understanding as of November 4th, 2019, was that Marva Lewis had never requested accommodations and had never provided any indication that she needed additional medical leave; is that right?
>
> A: Yes, that's right.
>
> Q: Did anyone at CoreCivic ever consider consulting with CorVel Corporation about Marva Lewis' medical status related to her worker's comp claim?
>
> A: I don't necessarily check with CorVel. But if -- yeah. Based on the information I had from [Defendant's HR manager in San Diego] Sherrie Lashlee, we did not have any medical indication that she was unable to return to work.
>
> (Ex. 4 33:15-34:4 (objection omitted).)
> (Also see Ex. 5 27:6-28:1, 35:14-36:1.)

**I.    Defendant was aware of – but chose to ignore – Ms. Lewis' medical status as addressed in the AME evaluation.**

On October 15, 2019 (*after* Defendant received the AME report), CorVel sent an email to Defendant's HR department stating that Ms. Lewis "recently attended an AME evaluation with Dr. Zink on 9/12/19 and we still await for [sic] that medical reporting." (Ex. 15.)  The email was circulated between Defendant's HR and in-house legal teams, just weeks before Ms. Lewis was terminated for "failing to return to work"

- 8 -

by October 21, 2019. (Ex. 1 150:25-152:5.)

Nonetheless, Defendant's 30(b)(6) witness testified that she did not consider the status of the AME evaluation to be relevant to whether Ms. Lewis required an extension of her medical leave as an accommodation:

> Q: And you say the only reason CoreCivic terminated Marva Lewis was because she didn't request an accommodation and she didn't provide any indication of her medical status prior to being terminated; is that right?
>
> A: Right.
>
> Q: And so you still believe it is not relevant that CoreCivic, through CorVel, is aware that Marva Lewis is being evaluated by Dr. Zink and that CoreCivic and CorVel are awaiting the medical reporting from that evaluation in September; correct?
>
> A: Right.
>
> (Ex. 4 40:13-25 (objection omitted.)

Similarly, another 30(b)(6) witness testified that Defendant never considered Ms. Lewis' medical status, as addressed in the AME report, prior to firing Ms. Lewis for failing to return to work:

> Q: Do you recall any discussion with anyone *ever* prior to the termination of Marva Lewis discussing the fact that as of October 15, 2019, CorVel as agent for CoreCivic, was still awaiting medical reporting from the AME evaluation on 9/12/19?
>
> A: I don't recall.
>
> (Ex. 3 109:5-10.)

### J.    Defendant never offered or even considered extending Ms. Lewis' leave of absence beyond October 21, 2019.

Although Defendant could have accommodated Ms. Lewis by simply extending her leave of absence beyond October 21, 2019, as requested by her doctors, Defendant never even entertained that option.  Defendant's corporate HR Director, Steven Scott, who made the final decision to terminate Ms. Lewis, testified as follows:

> Q: And did Andrea Cooper ever discuss that with you, the possibility of extending Marva Lewis's leave of absence past October 21st?

- 9 -

A: I don't recall.

Q: You don't recall that ever happening?

A: I don't recall if we had that discussion or not.

(Ex. 5 43:24-44:4.)

Q: I'll try to ask the question a different way. What is your understanding as to why CoreCivic didn't just extend Marva Lewis' medical leave of absence instead of firing her?

A: I don't recall those -- those specific discussions.

Q: You don't recall those discussions ever taking place?

A: I don't recall if we had those discussions or if we did not have those dis- -- discussions.

(Ex. 5 45:9-23 (objection omitted).)

And Defendant's 30(b)(6) witness on the topic of "reasonable accommodations for Plaintiff in 2019" testified as follows:

Q: What about extended leave? Was that something that CoreCivic considered for Marva Lewis?

A: Again, we didn't have any indication that she needed extended leave.

(Ex. 4 29:10-13 (also see 31:11-14).)

**K.    Defendant never offered or even considered reassignment as an accommodation, despite being short-staffed in Ms. Lewis' department and having multiple job vacancies for which Ms. Lewis was qualified.**

Multiple of Defendant's witnesses testified that Defendant never even considered – let alone offered to Ms. Lewis – reassignment as a potential accommodation.  For example, Defendant's 30(b)(6) witness testified as follows:

Q: Did CoreCivic ever consider putting Marva Lewis into a different position at Boston Avenue?

A: Again, that would have been a reassignment as an accommodation. And we just didn't consider accommodations at that point. We were anticipating she'd come back to work in her position.

Q: Okay. So did CoreCivic ever consider reassignment anywhere, meaning any other position or any other facilities for Marva Lewis?

- 10 -

A: Again, we didn't consider ***any*** accommodations.

(Ex. 4 27:5-14 (emphasis added).)

There was also no question that Defendant was short-staffed in fall 2019, particularly in Ms. Lewis' department. (Ex. 1 40:16-20; Ex. 3 26:21-25, 35:21-36:4, 101:9-15.) Which further begs the question: Why terminate a qualified, experienced employee during a staff shortage, instead of simply providing an accommodation (*temporary – unpaid* – medical leave) and bringing her back to work when she is cleared by her doctors?

**L.    Defendant never considered <u>any</u> accommodations for Ms. Lewis beyond the single extension of her medical leave to October 21, 2019.**

In addition to never offering additional leave or reassignment as reasonable accommodations, Defendant admitted in deposition that it did not offer or consider *any* accommodations for Ms. Lewis beyond extending her leave to October 21, 2019:

> Q; So other than assuming Ms. Lewis would come back as a treatment counselor after her leave of absence, what other reasonable accommodations did CoreCivic consider for Ms. Lewis?
>
> A: We didn't consider any. Like I think I testified earlier, we just weren't at that point with her.
>
> Q: When were you not at that point with her?
>
> A: During any of the -- of the leave. We never got any communication from her that an accommodation would be needed to come back.
>
> Q: And so CoreCivic essentially did not consider any accommodation for Ms. Lewis; is that right?
>
> A: Right.

(Ex. 4 26:17-27:4)

**M.    Defendant admitted in deposition that accommodating Ms. Lewis would not have caused a hardship.**

Despite alleging 47 boiler-plate affirmative defenses in its answer, Defendant offers no explanation for terminating Ms. Lewis, aside from purported job

- 11 -

abandonment. Defendant admitted in discovery that Ms. Lewis was not terminated for performance issues, illegal conduct, staffing requirements, contract requirements, or any other reason that was not specifically identified in the November 4, 2019 termination letter. (ZSS Decl. ¶ 9 [RFA Nos. 9-14]; Glaske Depo v1 12:17-13:24, 42:24-43:2, 49:4-8, 59:21-60:10.)  In addition, Defendant's 30(b)(6) witness admitted during deposition that accommodating Ms. Lewis would not have posed an undue hardship upon Defendant:

> Q: Okay. Let's go back up to Topic Number 2, CoreCivic's "alleged Affirmative Defense of 'Undue Hardship.'" Did CoreCivic terminate Marva Lewis because it caused an undue hardship on the company?
>
> A: Not that I'm aware, no.
> Q. Going to Topic Number 3, the "alleged Affirmative Defense of 'after-acquired evidence,'" you say Marva Lewis was not fired because of anything related to her job performance; right?
>
> A: At the time, no, I was not aware of anything related to performance.
>
> Q: Are you aware of anything today?
>
> A: I'm not aware of anything at this time.
>
> Q: Are you aware of any evidence acquired after the filing of this lawsuit that would support a termination of Marva Lewis for reasons other than not responding to those letters in October or November?
>
> A: I'm -- I'm not aware.
>
> > (Ex. 2 49:21-50:15 (objection omitted).)
> > (Also see Ex. 8 [RFA No. 10].)

**N.    Defendant employs a pattern and practice of discriminating and retaliating against disabled employees at its Boston Avenue facility.**

As identified in Plaintiff's Request for Judicial Notice, there have been at least two other cases filed against this Defendant – in this District – in the year 2021 alone, which involve nearly identical claims for disability discrimination; nearly identical fact patterns; and *occurred at the exact same location and involve the exact same HR personnel*. (See Plaintiff's Request for Judicial Notice.)

- 12 -

There is no question that Defendant, particularly at this facility, employs a pattern and practice of discriminating and retaliating against disabled employees.

## III. LEGAL ARGUMENT IN SUPPORT OF PARTIAL SUMMARY JUDGMENT

Ms. Lewis submits the following legal authority and argument in support of her motion for partial summary judgment.

### A. Rule 56 provides for partial summary judgment in favor of a plaintiff.

Either a plaintiff or a defendant may move for summary judgment. *Nissan Fire & Marien Ins. Co. v. Fritz. Cos.*, 210 F.3d 1099, 1102-1103 (9th Cir. 2000). Importantly, Federal Rule 56(a) allows for summary judgment of all or part of a claim. Fed. R. Civ. P. 56(a); *Kohler v. Islands Rests., LP*, 280 F.R.D. 560, 564 (S.D. Cal. 2012). "The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication…serves the purpose of speeding up litigation by eliminating before trial matters where there is no genuine issue of fact." *Advisory Committee on Rules of Civil Procedure (June 1946) – Rule 56. Summary Judgment. Subdivision (d)*.

Thus, summary judgment, directed at even part of a claim, furthers the purpose of the Federal Rules of Civil Procedure to "secure the just, speedy, and inexpensive determination" of a case, by eliminating the need for parties to put on evidence at trial regarding elements of a claim or defense that are not in dispute, even where a trial is still necessary on other elements. See *White v. Nucor Corp.*, 148 F.Supp.3d 1316, 1328 (D. Utah 2015).

### B. Ms. Lewis is entitled to partial summary judgment of the following issues.

Ms. Lewis seeks partial summary judgment on each of the issues discussed below. Notably, this motion does not seek to adjudicate any issue concerning damages;

it leaves for trial Ms. Lewis' cause of action alleging retaliation for Ms. Lewis' use of medical leave under the California Family Rights Act ("CFRA"); and it does not involve questions of "motive" or "intent", which are appropriately left for the jury to decide.

Furthermore, the issues sought to be adjudicated herein are based on undisputed facts corroborated by Defendant's own witnesses and documents.  In other words, this is not a matter of what Ms. Lewis says versus what Defendant says.

### 1. Ms. Lewis was "disabled" and Defendant regarded her as "disabled" within the meaning of the Fair Employment and Housing Act.

California's FEHA prohibits discrimination against any individual who has, or is perceived as having, a "physical disability, mental disability or medical condition." Gov. Code § 12920; 12926(j)(4) & (5); 2 Cal. Code Regs. § 11065(d).  The FEHA defines "mental disability" as "any mental or psychological disorder … emotional or mental illness…" that "limits a major life activity."  Gov. Code § 12926(j)(1); 2 Cal. Code Regs. § 11065(d)(1); s*ee also* Gov. Code § 12926.1(c); 2 Cal. Code Regs. § 11065(d)(1).

Under the FEHA, the definition of "mental disability" is broadly construed to protect employees from discrimination due to actual or perceived mental impairment that is disabling, potentially disabling, or perceived as disabling or potentially disabling.  Gov. Code § 12926.1(b); 2 Cal. Code Regs. § 11065(d)(5), (6).  Whether an employee meets the definition of "disability" is generally not a contentious issue. *See* 2 Cal. Code of Regs. § 11064(b): "As with the Americans with Disabilities Act of 1990 (ADA)…the primary focus in cases brought under the FEHA should be whether employers and other covered entities have provided reasonable accommodation to applicants and employees with disabilities…not whether the individual meets the definition of disability, which should not require extensive analysis."

1    Here, as in most cases, the issue of whether Ms. Lewis was "disabled" within

2    the meaning of the FEHA is not subject to dispute.  Ms. Lewis submitted multiple

3    doctor's notes from her treating physicians which confirmed that she was unable to

4    work and was deemed "totally temporarily disabled."  There is also no dispute that

5    Defendant regarded Ms. Lewis as disabled, because Defendant granted Ms. Lewis'

6    request for FMLA medical leave and accepted multiple doctors' determinations that

7    she suffered from a condition that required her to be out of work.

8    Accordingly, based on the undisputed facts, Ms. Lewis suffered from a

9    disability as defined by the FEHA.

10

11    **2.    Ms. Lewis requested an accommodation for her disability.**
        **a.    Extended leave is a form of accommodation.**

12

13    The FEHA and its regulations provide a non-exhaustive list of possible

14    accommodations for employees with disabilities.    Examples of reasonable

15    accommodations include: "[p]roviding paid or unpaid leave for treatment and

16    recovery."  2 Cal. Code Regs. § 11065(p)(2)(M).  A leave of absence beyond the

17    statutorily guaranteed time afforded by the FMLA is considered an accommodation

18    within the meaning of the FEHA.  Specifically, the FEHA regulations declare:

19    When the employee cannot presently perform the essential functions
      of the job, or otherwise needs time away from the job for treatment

20    and recovery, holding a job open for an employee on a leave of
      absence *or extending a leave provided by the CFRA, the FMLA,*

21    *other leave laws or the employer's leave plan* may be a reasonable
      accommodation provided that the leave is likely to be effective in

22    allowing the employee to return to work at the end of the leave, with
      or without further reasonable accommodation, and does not create an

23    undue hardship for the employer.

24    2 Cal. Code Regs. § 11068(c)

25    California case law under the FEHA is in accord that an employee's request for

26    a leave of absence for a finite period of time constitutes a request for a reasonable

27    accommodation.  See *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000)

28

- 15 -

["Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation"].

        **b.**    **A request for accommodation need not come directly from the employee – it may be made on the employee's behalf.**

The California Legislature has expressly incorporated the EEOC's Enforcement Guidance into the FEHA. (*See* Gov. Code § 12926.1(e) ["The Legislature affirms the importance of the interactive process between the applicant or employee and the employer in determining a reasonable accommodation, as this requirement has been articulated by the Equal Employment Opportunity Commission in its interpretive guidance of the federal Americans with Disabilities Act of 1990."].) The following example is included in the EEOC's Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA ("EEOC Guidance") https://www.eeoc.gov/policy/docs/accommodation.html:

> 2. May someone other than the individual with a disability request a reasonable accommodation on behalf of the individual?
>
> Yes, a family member, friend, ***health professional***, or other representative may request a reasonable accommodation on behalf of an individual with a disability. (Citations omitted.) Of course, the individual with a disability may refuse to accept an accommodation that is not needed.
>
> …
>
> Example B: An employee has been out of work for six months with a workers' compensation injury. The employee's doctor sends the employer a letter, stating that the employee is released to return to work, but with certain work restrictions. (Alternatively, the letter may state that the employee is released to return to a light duty position.) The letter constitutes a request for reasonable accommodation.

//

//

//

### c.    Knowledge possessed by Defendant's third-party administrator, CorVel, is imputed to Defendant

An employer has knowledge of information contained in the records of its third-party administrator and of the actions of the employees of the third-party administrator performed in the scope and course of employment. 8 Cal. Code Regs. § 10112.1.

An employer "surely has the ability to review an employee's [workers' compensation] record for more information concerning the employee's medical condition in determining whether she possesses a disability and requires an accommodation." *Diaz v. Federal Express Corp.* (C.D. Cal. 2004) 2004 WL 5402500 *10, quoting *Rowe v. City & County of San Francisco* (N.D.Cal.2002) 186 F.Supp.2d 1047, 1054 at n .8. "The effect of Plaintiff's failure to ask for an accommodation by a means other than that possessed by the workers' compensation claims administrators (i.e. [an AME] report), is not relevant to determining whether [the AME] report contained medical information that would be necessary for Defendant to have in order to modify Plaintiff's work duties." *Diaz* at 11.

Here, Defendant's third-party administrator, CorVel, managed and possessed all of Ms. Lewis' medical treatment records during her leave of absence. Furthermore, Defendant was represented by an attorney in the workers' compensation claim who received copies of all medical records, as well, including the October 8, 2019 AME report advising that Ms. Lewis required an extension of her leave.

### d.    Defendant ignored Ms. Lewis' requests for an accommodation.

Here, Ms. Lewis requested an accommodation on at least two occasions. First, in June 2019, she requested leave beyond the statutory timeframe provided by the FMLA – thereby extending her leave to October 21, 2019. The second request occurred when the AME doctor sent Defendant a detailed report on October 8, 2019 stating that Ms. Lewis would require at least 6 to 8 weeks of additional leave.

**3.    Defendant was obligated to engage in a timely, good faith interactive process in response to Ms. Lewis' request for accommodation.**

The FEHA imposes upon the employer an obligation to initiate an interactive process with an employee upon the occurrence of <u>any one</u> of three separate circumstances.   Specifically, the FEHA regulations explain:

> Notice. An employer or other covered entity shall initiate an interactive process when:
>
> …
>
> (2) the employer or other covered entity otherwise ***becomes aware of the need for an accommodation through a third party or by observation***, <u>or</u>
>
> (3) the employer or other covered entity ***becomes aware of the possible need for an accommodation because the employee with a disability has exhausted leave*** … for the employee's own serious health condition under the CFRA and/or the FMLA … ***and yet the employee or the employee's health care provider indicates that further accommodation is still necessary*** for recuperative leave or other accommodation for the employee to perform the essential functions of the job.

2 Cal. Code Regs. § 11069(b).

Here, Ms. Lewis first requested an accommodation to extend her leave of absence beyond the 12 weeks of FMLA, to October 21, 2019.  Then, on October 8, 2019, her doctors requested a second extension of her leave, by informing Defendant that Ms. Lewis required at least 6 to 8 weeks of additional leave before she could return to work. Defendant was aware that Ms. Lewis required additional time off because its acting agent, CorVel, and its attorney, Stacy Bickler, both received copies of Ms. Lewis' medical records – including, among other things, the AME report in which a treating doctor explained that Ms. Lewis was totally temporarily disabled as of October 8, 2019 and required at least 6-8 weeks of additional time to heal and recover.

Accordingly, Defendant was obligated to initiate an interactive process with Ms. Lewis when Defendant learned that Ms. Lewis could not return to work by October 21, 2019.

> **4.    Defendant failed to engage in a timely, good faith interactive process with Ms. Lewis in response to her request for accommodation.**

The FEHA makes it an unlawful employment practice for an employer "to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective accommodations." Gov. Code § 12940(n). Several guiding principles apply, once an employer, as here, is on notice of an employee's need for accommodation.

First, the employer's duty to engage in the interactive process is "continuous." See *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal.App.4th 952, 986 (2008) [stating that the employer is not absolved of liability where it takes some steps to work with an employee, but is then responsible for a later breakdown in the process].

Second, the employer must do one of two things:

> The employer or other covered entity shall <u>either</u> [1] grant the applicant's or employee's requested accommodation, or [2] reject it after due consideration and initiate discussion with the applicant or employee regarding alternative accommodations.

> 2 Cal. Code Regs. § 11069(c)(1) [emphasis added].

Thus, where an employer rejects the employee's requested accommodation and offers no alternatives, the employer is responsible for the breakdown in the interactive process, as a matter of law. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116-17 (9th Cir. 2000) [*en banc*][4] [holding that an employer fails to engage in the

---

[4] Vacated on other grounds in *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). But the *en banc* opinion of the 9th Circuit discussing the interactive process remains binding precedent.

interactive process as a matter of law where it rejects the employee's proposed accommodations and offers no practical alternatives].

Here, indisputably, Defendant did not grant Ms. Lewis' request for an extension of her leave, because Defendant terminated her employment for failing to return to work by October 21, 2019. Per FEHA guidelines, Defendant could only reject Ms. Lewis' request "*after due consideration,*" and once rejected, Defendant was required under the law to initiate a new discussion with Ms. Lewis about alternative accommodations (the second step in the interactive process).

Here, Defendant ignored both steps by 1) giving *no* consideration to Ms. Lewis' request for leave beyond October 21, 2019, and 2) failing to then initiate an interactive dialogue regarding alternative accommodations.

Lastly, to the extent Defendant relies on its letters to Ms. Lewis requesting FMLA information as evidence that Defendant engaged in an interactive dialogue, that argument fails. As described above, upon learning that Ms. Lewis required additional leave beyond October 21, 2019, Defendant had an affirmative duty to either grant the requested accommodation (extend Ms. Lewis' leave) or begin looking for additional accommodations. Here, Defendant did neither. Furthermore, Defendant plainly ignored its entire workers' compensation file on Ms. Lewis, despite its agents and its lawyer receiving medical documents describing her leave status.

Accordingly, the Court should summarily adjudicate that Defendant failed to engage in any interactive process, as required by the FEHA, with Ms. Lewis.

### 5. Ms. Lewis was able to perform her job with or without accommodation.

One of the elements Ms. Lewis must prove as part of her claim that Defendant failed to grant her a reasonable accommodation is that she was able to perform the essential functions of her job with or without accommodation. *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal.App.4th 952, 977-978 (2008).

Here, Ms. Lewis requested only a temporary extension of her medical leave of absence in order to return to work. Ms. Lewis had *no other limitations* preventing her from performing the essential functions of her job. Furthermore, the AME doctor made clear in his report that "I expect that Ms. Lewis will be able to return to her usual and customary occupation for the employer in the future..." Aside from requiring a temporary extension of her leave, Defendant cannot point to anything that would have prevented Ms. Lewis from performing her job.

In sum, Ms. Lewis was able to perform her job of Treatment Counselor with a temporary accommodation. Accordingly, the Court should adjudicate that Ms. Lewis was able to perform the essential functions of her job with or without accommodation.

### 6. Defendant Failed to Grant Ms. Lewis a Reasonable Accommodation.

"The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., she can perform the essential functions of the position with or without an accommodation); and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Cuiellette v. City of Los Angeles*, 194 Cal.App.4th 757, 766 (2011).

Here, for the reasons addressed above, Ms. Lewis: (a) had a disability and (b) could have performed the essential functions of her job if Defendant had granted her request for accommodation. Accordingly, all that remains to adjudicate is whether Defendant failed to provide the accommodation – which it clearly did.

The undisputed facts are simple: Defendant did *not* grant Ms. Lewis the accommodation she requested. Accordingly, the Court should summarily adjudicate that Defendant failed to provide Ms. Lewis with a reasonable accommodation.

### 7. By Failing to Grant Ms. Lewis a Reasonable Accommodation, Defendant Discriminated Against Ms. Lewis Based on her Disability.

- 21 -

For Ms. Lewis to prevail on her claim that Defendant discriminated against her based on her disability, Ms. Lewis must prove that: (1) she suffered from a disability or was regarded as suffering from a disability; (2) she could perform the essential functions of her job with or without reasonable accommodations; and (3) she was subjected to an adverse employment action because of her disability or perceived disability. *Sandell v. Taylor-Listub, Inc.*, 188 Cal.App.4th 297, 310 (2010).

Importantly, in order to prevail on the third element, Ms. Lewis need not prove that Defendant harbored any discriminatory intent toward her. As explained by the California Court of Appeal: "[W]e conclude that disability discrimination claims are fundamentally different from the discrimination claims based on the other factors [such as sex, gender, religion, etc.] listed in section 12940 subdivision (a)." *Wallace v. County of Stanislaus*, 245 Cal.App.4th 109, 122 (2016). Accordingly, "California law does not require an employee with an actual or perceived disability to prove that the employer's adverse employment action was motivated by animosity or ill will against the employee." *Id*. at 115 [emphasis added].

Here, based on the undisputed facts, Ms. Lewis was subjected to an adverse employment action when Defendant terminated her employment instead of granting (or even considering) her request for accommodation. Further, Defendant cannot dispute that it fired Ms. Lewis *because* of her disability – that is to say, but for Ms. Lewis taking leave for her disability, Defendant would not have fired her.

Accordingly, the Court should summarily adjudicate that Defendant discriminated against Ms. Lewis because of her disability in violation of the FEHA.

### 8.    Defendant retaliated against Ms. Lewis because she requested an accommodation in the form of extended medical leave.

Under the FEHA, employers are prohibited from retaliating because an employee requests an accommodation. Gov. Code § 12940(m)(2). To prevail on her claim for FEHA retaliation, Ms. Lewis must only establish that: (1) she engaged in a

protected activity; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042 (2005).

Here, as discussed above, Ms. Lewis has already established that: (1) she engaged in protected activity by requesting an accommodation; (2) she was subjected to an adverse employment action, because she was fired on November 4, 2019; and (3) but for taking leave for her disability, Defendant would not have fired her.

Here, the causal link between Ms. Lewis requesting an extension of her medical leave, on one hand, and Defendant's termination of her employment, on the other hand, speaks for itself because Defendant's only proffered reason for firing Ms. Lewis was that she did not return to work on October 21, 2019 …*because she was still on medical leave*.

Accordingly, Ms. Lewis requests the Court summarily adjudicate that Defendant retaliated against Ms. Lewis for requesting an accommodation, in violation of Government Code section 12940(m)(2).

### 9. Defendant's Thirty-First Affirmative Defense Fails Because Granting Ms. Lewis' Request for Accommodation Would Not Have Caused Any Undue Hardship.

The only statutory limitation in the FEHA that justifies an employer's refusal to grant a disabled employee a requested accommodation is if such an accommodation would cause an "undue hardship" to the employer. Gov. Code § 12940(m)(1); 2 Cal. Code Regs. § 11068(a). Critically, an employer may not decide *post hoc*, after it has denied the accommodation and fired the employee, that an accommodation would have caused an undue hardship. California law, and the EEOC Guidance (expressly incorporated into California law), speak directly to this fundamental principle:

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MSJ
3:21-cv-01385-JAH-BGS

> An employer . . . has an affirmative duty to make reasonable accommodation(s) for the disability of any . . . employee if the employer . . . knows of the disability, unless the employer . . . can demonstrate, after engaging in the interactive process, that the accommodation would impose an undue hardship.

2 Cal. Code Regs. § 11068(a).

The EEOC Guidance concurs: "An employer must assess on a case-by-case basis whether a particular reasonable accommodation would cause undue hardship." EEOC Guidance, https://www.eeoc.gov/policy/docs/accommodation.html.  Thus, an employer may not manufacture, for the first time during the course of litigation, facts to support an undue hardship defense.

Moreover, even when the company does conduct such an analysis in real time, such an evaluation must be considered in light of the following statutory instructions:

> "Undue hardship" means an action requiring significant difficulty or expense, when considered in light of the following factors:
>
> The nature and cost of the accommodation needed.
>
> (4) The type of operations, including the composition, structure, and functions of the workforce of the entity. . .

Gov. Code § 12926(u).

Accordingly, in order to meet its burden on the "undue hardship" defense, Defendant would have to demonstrate that, in real time, it *assessed* through the *interactive process*, the above statutory factors.  Here, there is no question that Defendant did not do this.

Here, all witnesses involved in the decision to terminate Ms. Lewis' – including both of Defendant's 30(b)(6) witnesses – testified that the issue of an "undue hardship" was *never* discussed or even considered prior to her termination.  Furthermore, Defendant's witnesses have proffered only one reason for firing Ms. Lewis – that she did not return to work on October 21, 2019.  Therefore, undue hardship was clearly not the reason Defendant fired Ms. Lewis.

- 24 -

Accordingly, the Court should summarily adjudicate that Defendant's alleged affirmative defense of hardship fails as a matter of law.

### 10. Ms. Lewis is Entitled to Summary Adjudication of her Wrongful Termination Claim as a Matter of Law.

Ms. Lewis submits that if the Court adjudicates that Defendant discriminated against her and retaliated against her in violation of the FEHA, she is therefore entitled to summary adjudication of her wrongful termination claim. *Angell v. Peterson Tractor, Inc.*, 21 Cal.App.4th 981, 987 (1994).

## IV. CONCLUSION

For the foregoing reasons, Ms. Lewis respectfully requests the Court grant this motion in full, either by partial summary judgment or summary adjudication of each of the issues discussed herein.  As demonstrated in this memorandum, and in the supporting evidentiary record, each of these adjudications are based on facts that cannot be disputed.


DATED: July 10, 2023          **SCHUMACHER PC**

                              */s/ Zachary S. Schumacher*
                         By:  ZACHARY S. SCHUMACHER
                              Attorneys for Plaintiff,
                              MARVA LEWIS