UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVA LEWIS,<br><br>                                    Plaintiff,<br><br>v.<br><br>CORECIVIC OF TENNESSEE, LLC, a Tennessee limited liability company doing business in the state of California; CORECIVIC, LLC, a Delaware limited liability company doing business in the state of California; CORECIVIC, INC., a Maryland corporation doing business in the state of California; and DOES 1- 20, inclusive,<br><br>                                    Defendants. | Case No.:  3:21-cv-01385-JAH-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, (ECF No. 40);**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, (ECF No. 41).** |

## I.    INTRODUCTION

Pending before the Court is Plaintiff Marva Lewis' ("Lewis" or "Plaintiff") Motion for Partial Summary Judgment, ("Pl.'s MSJ," ECF No. 40-1), and Defendants CoreCivic of Tennessee, LLC, CoreCivic, LLC, and CoreCivic, Inc. (collectively, "Defendants" or "CoreCivic") Motion for Summary Judgment, ("Defs.' MSJ," ECF No. 41-1).  Also before the Court are Plaintiff's response in opposition to Defendants' Motion for Summary Judgment ("Pl.'s MSJ Opp'n," ECF No. 53); Defendants' response in opposition to

1

Plaintiff's Motion for Partial Summary Judgment ("Defs.' MSJ Opp'n," ECF No. 44); Plaintiff's reply in support of her Motion for Partial Summary Judgment ("Pl.'s MSJ Reply," ECF No. 45); and Defendants' reply in support of their Motion for Summary Judgment ("Defs.' MSJ Reply," ECF No. 54).  The motions are decided without oral argument pursuant to Civil Local Rule 7.1.d.1.  Having considered the Parties' arguments and the relevant law, and for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Partial Summary Judgment, and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment.

## II.   BACKGROUND

Defendants are owners of for-profit prison facilities in the United States, including three facilities in San Diego County: Boston Avenue, Oceanview, and Otay Mesa.  (Pl.'s MSJ at 7[1]).  On September 5, 2016, Plaintiff began work as a Treatment Counselor at the Boston Avenue facility on an at-will basis, where she counseled incarcerated persons suffering from substance abuse.  (Declaration of Marva Lewis in Support of Pl.'s MSJ, "Lewis Decl.," ECF No. 40-3 at ¶ 2; Defs.' MSJ at 10).  In the spring of 2019, Plaintiff began to suffer from severe depression and anxiety, resulting in her requesting medical leave from the Human Resources Manager of the Boston Avenue facility, Sherri Lashlee. (Lewis Decl. at ¶¶ 3-4; Defs.' MSJ at 11).  Lashlee provided Plaintiff with forms for medical leave under the Family Medical Leave Act on April 24, 2019, including forms titled, "Designation Notice (FMLA)" and "Notice of Eligibility and Rights & Responsibilities (FMLA)," amongst others.  (Lewis Decl. at ¶ 4; Declaration of Sherrie Lashlee in Support of Defs.' MSJ, "Lashlee Decl.," ECF No. 41-3 at 636, ¶ 3).  According to Plaintiff, she spoke on the phone to Lashlee who informed her that Plaintiff's leave of absence would be treated as a Worker's Compensation ("WC") claim, as opposed to leave

---

[1]      Unless otherwise stated, page numbers referenced herein refer to page numbers generated by the CM/ECF system.

under the FMLA.  (Lewis Decl. at ¶ 5).  Plaintiff further claims Lashlee told her to "throw away the FMLA paperwork" and that "all requisite medical documentation … would be provided directly to [Lashlee] by the treating WC doctors."  (*Id.*)  In addition, Lashlee testified she told Plaintiff not to submit the form designated for a personal physician because the doctor for Plaintiff's concurrent WC claim would fill it out.  (Declaration of Zachary S. Schumacher in Support of Pl.'s MSJ, "Schumacher Decl.," ¶ 20, Ex. 1, ECF No. 40-2 (Lashlee Depo.), 49:15-50:13[2]; Lewis Decl. at ¶ 5).  Then, on April 29, Plaintiff submitted a "Request for Leave (FMLA)" form to Lashlee.  (Lashlee Decl., ¶ 4, Ex. II-D, ECF No. 41- 3 at 684).  However, in a letter dated April 24, 2019, Plaintiff's FMLA leave request was approved via a Designation Notice based upon "[her] own serious health condition."  (Schumacher Decl., ¶ 11, Ex. 10, ECF No. 40-2 at 177-78).

CorVel is a third-party administrator Defendants hired to manage their WC claims.  (Declaration of Michael Diamond in Support of Pl.'s MSJ, "Diamond Decl.," ECF No. 40-5 at ¶ 6; Defs.' MSJ Opp'n at 7).  On May 2, 2019, Plaintiff received a letter from CorVel stating that it represented Defendants and would be handling her WC claim "on behalf of CoreCivic CAI."  (Lewis Decl. at ¶ 8, Ex. 13, ECF No. 40-2 at 184-86).  Plaintiff thereafter retained an attorney, Michael Diamond, to represent her interest in the WC matter.  (*Id.* at ¶ 7).

On approximately May 15, 2019, Defendants began sending Plaintiff a series of letters regarding her FMLA leave status.  (Lewis Decl. at ¶ 9; Lashlee Decl. at ¶ 5).  The first of the series dated May 15, was from Lashlee to Plaintiff acknowledging receipt of Plaintiff's request for leave and asking that Plaintiff provide a "completed health care provider form."  (Lashlee Decl. at ¶ 5, Ex. II-E, ECF No. 41-3 at 686).  After failing to receive the requested form, Lashlee sent a second letter to Plaintiff on May 28, 2019,

---

[2]     Page numbers in citations to depositions are those appearing on the face of the deposition transcript.

reiterating her request for a completed health care provider form. (*Id.* at ¶ 6, Ex. II-F, ECF No. 41-3 at 688).

Plaintiff claims the letters confused her "because, when HR informed [her] that [her] leave would be treated as a WC claim, they also instructed [her] to disregard any correspondence related to FMLA." (Lewis Decl. at ¶ 9). Plaintiff states Lashlee had initially explained "[Plaintiff] would likely continue to receive FMLA notifications because HR had originally entered [her] leave into their 'system' as FMLA, which triggered a series of automatic mailings under FMLA protocol." (*Id.*) However, Plaintiff understood Lashlee to mean "[Plaintiff] did not need to respond to Defendant's letters about anything pertaining to FMLA, because her claim was being handled between Defendant and the WC doctors." (*Id.*) With this understanding, Plaintiff explains she addressed the issue of her continued receipt of FMLA letters with HR during her bi-weekly visits to provide health insurance payments. (*Id.* at ¶ 10). Plaintiff describes she was initially told not to worry about the letters, but, over time, HR could not explain whether the letters "required [her] attention or not." (*Id.*) Plaintiff contends she consistently expressed to HR that she was confused about the FMLA paperwork. (*Id.* at 11). In response to one such voicemail Plaintiff left for Lashlee, Lashlee sent Plaintiff a letter stating, in part: "You cannot decline to take FMLA leave if the leave qualifies. As such, your time off since April 23, 2019, will be counted as FMLA leave." (Lashlee Decl. at ¶ 7). On July 26, 2019, Lashlee sent Plaintiff another letter, which informed Plaintiff that "[her] 12-weeks FMLA leave expired on July 15, 2019[,]" and that if she needed more time, "[she] may be eligible for non-FMLA medical leave, under which [she] could receive additional time that would be unpaid." (Lashlee Decl. at ¶ 8).

During these ongoing communications between Plaintiff and Defendants' HR department, Plaintiff visited her treating physician, Dr. Heywood Zeidman on June 21, 2019, who certified that she would not be expected to return to work before October 21, 2019 due to her medical condition. (Lewis Decl. at ¶ 12; Lashlee Decl. at ¶ 11, Ex. II-L, ECF No. 41-3 at 710). Plaintiff understood that Dr. Zeidman would deliver the medical

note to Defendants. (Lewis Decl. at ¶ 12). However, Defendants claim it was not until August 5, 2019, that Plaintiff provided them with the medical note from Dr. Zeidman. (Lashlee Decl. at ¶ 11). Also on August 5, 2019, Plaintiff provided Defendants with a written request for non-FMLA leave, attaching a "Certification of Health Care Provider (Non-FMLA)" form, only the first page of which was completed out of seven pages. (Lashlee Decl. at ¶ 10, Exs. J, K, ECF No. 41-3 at 700, 702-08).

On September 12, 2019, Plaintiff was evaluated by Dr. Robert Zink, a clinical psychologist, as part of an Agreed Medical Evaluation ("AME") related to the ongoing WC claim. (Lewis Decl. at ¶ 13; Schumacher Decl., ¶ 20, Ex. 19 (AME Report), ECF No. 40- 2 at 209-13). That report made two pertinent statements pertaining to the duration of Plaintiff's medical leave. First, Dr. Zink stated: "I expect that period of [Temporarily Totally Disabled] to last at least another 6 to 8 weeks." (AME Report at 210). Second, Dr. Zink opined, "Ms. Lewis requires additional psychotherapy … for at least the next 2 to 3 months, hopefully during which time she can further recover." (*Id.* at 211). A declaration of service shows the AME Report was served on Michael Anaple[3], Michael Diamond[4], and Stacy Bickler[5] on October 8, 2019. (*Id.* at 213). Defendants contend Lashlee never received the report and CorVel did not receive it until after November 12, 2019. (Defs.' MSJ Opp'n at 14). Likewise, while Bickler states that he was served with the AME report, he did not personally provide it to Defendants, nor is he aware of anyone in his office who did. (Bickler Decl. at ¶ 3).

---

[3]    Michael Anaple is a representative of CorVel, Defendants' third-party administrator to handle WC claims. (Declaration of Paul Gleason In Support of Defs.' MSJ Opp'n, "Gleason Decl.," ¶ 4, Ex. 1-C (Deposition of Andrea Cooper, "Cooper Depo."), ECF No. 44-1 at 571, 36:10-12).

[4]    Michael Diamond is an attorney retained by Plaintiff to represent her in her WC case. (Lewis Decl. at ¶ 7).

[5]    Stacy Bickler is an attorney hired by Defendants to represent them in Plaintiff's WC case. (Declaration of Stacy Bickler In Support of Defs.' MSJ Opp'n, "Bickler Decl.," ¶¶ 1-2, ECF No. 44-1 at 900).

On September 30, 2019, Lashlee sent Plaintiff another letter, which informed her that her FMLA leave expired on July 15, 2019, and her non-FMLA leave would expire on October 21, 2019. (Lashlee Decl. at ¶ 12, Ex. II-M, ECF No. 41-3 at 712). Plaintiff responded to this letter with a voicemail on October 6, 2019, stating her belief that she was not on FMLA leave but rather on WC leave, and the letters she received were incorrect and not applicable. (Lashlee Decl. at ¶ 13). Lashlee addressed the voicemail in a letter on October 17, 2019, in which she explained:

> This is a follow up letter to my correspondence to you of September 30, 2019, and your voice message on October 6, 2019. As stated earlier, your maximum leave under CoreCivic policy will expire on October 21, 2019. This will completely exhaust your authorized 26 weeks of leave. Your FMLA and non-FMLA run concurrently with any time for which you may receive compensation under workers' compensation, and whether you receive pay through workers' compensation does not affect the dates of your FMLA and non-FMLA leave. Accordingly, we expect you to return to work on October 21, 2019. You will need to bring fitness for duty documentation from your health care provider, with or without any applicable restrictions and accommodation needs.

(Lashlee Decl. at ¶ 14, Ex. II-N, ECF No. 41-3 at 715). The letter further stated, "This is to request once more that you contact me immediately if you are unable to return to your duties for any reason." (*Id.*) Lashlee sent one final notice to Plaintiff on October 22, 2019, informing her that it was "critically important" to contact HR within ten days to arrange for Plaintiff's return to work or inform them of her current medical status. (*Id.* at ¶ 15, Ex. II-O, ECF No. 41-3 at 718). That letter also explained that, if Plaintiff did not respond within ten days, Defendants would assume she did not intend to return to work and terminate her employment. (*Id.*) On November 4, 2019, Plaintiff was informed of her termination via letter, along with information regarding unemployment benefits and picking up her belongings. (*Id.* at ¶ 16, Ex. II-P, ECF No. 41-3 at 721; Lewis Decl. at ¶ 14). The letter stated: "Since we have not heard from you, we must assume that you do not intend to return to work." (Lashlee Decl., Ex. II-P, ECF No. 41-3 at 721; Lewis Decl. at ¶ 14).

Plaintiff filed this action on August 2, 2021. (S*ee* "Compl.", ECF No. 1).  Following the Court granting in part and denying in part Defendants' motion to dismiss, the surviving claims—and the subject matter of the instant motion—are: (1) Interference in Violation of the FMLA; (2) Interference in Violation of the CFRA; (3) Retaliation in Violation of the CFRA; (4) Disability Discrimination in Violation of the FEHA; (5) Failure to Provide Reasonable Accommodation in Violation of the FEHA; (6) Failure to Engage in the Interactive Process in Violation of the FEHA; (7) Failure to Prevent Unlawful Discrimination/Retaliation; (8) Wrongful Termination in Violation of Public Policy; and (12) Violation of California Business and Professions Codes Section 17200 et seq.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers courts to enter summary judgment on claims or defenses that lack a factual foundation. Rule 56(a) limits summary judgment to cases where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a).  The moving party carries the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  An issue is "genuine" only if there exists sufficient evidence for a reasonable trier of fact to find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything . . ..  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.,* 210 F.3d 1099, 1102-03 (9th Cir. 2000); *see also Horphag Research. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.").  It is only when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party that there is "no geuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Crop.*, 475 U.S. 574, 587 (1986) (quoting *First*

*Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  However, if "a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense."  *Id.* at 1103.  Then, the opposing party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.' "  *Celotex Corp.*, 477 U.S. at 324 (citing Fed. R. Civ. P 56(e)).

It has long been held that "[t]he court must examine the evidence in the light most favorable to the non-moving party."  *United States v. Diebold, Inc.*, 396 U.S. 654 (1962).  Summary judgment should be denied if any issue of material fact exists.  *Anderson*, 477 U.S. at 255.  It is not the role of the court to weigh evidence, determine credibility, and draw inferences from facts.  *Id.* at 155.  "[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its merits."  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citations and quotation marks omitted).  Moreover, "when simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them."  *Id.* at 1134.

## IV.   DISCUSSION

### A.   Evidentiary Objections

On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  An "objection functions much as an objection at trial, adjusted for the pretrial setting.  The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  *See* Advisory Committee's Notes on 2010 Amendment to Fed. R. Civ. P. 56.  At the summary judgment stage, the court may consider inadmissible evidence if it may be presented in an admissible form at trial.  *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order

1   to avoid summary judgment."); *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003)

2   (holding the contents of the plaintiff's diary admissible for purposes of summary judgment

3   because the contents would be admissible at trial through the plaintiff's personal

4   knowledge). At the summary judgment stage, the court focuses on the admissibility of the

5   evidence's contents, not its form. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th

6   Cir. 2021).

7        Additionally, not all objections that would be proper at trial are proper during the

8   summary judgment stage. For example, relevance and improper legal conclusion

9   objections are moot and duplicative of the summary judgment standard. *See Sandoval*, 985

10  F.3d at 665; *Sec. & Exch. Comm'n v. Criterion Wealth Mgmt. Servs., Inc.*, 599 F.Supp.3d

11  932, 945 (C.D. Cal. 2022); *McCarthy v. R.J. Reynolds Tobacco Co.*, No.

12  CIV2092495WBSDAD, 2011 WL 13405571, at *1 (E.D. Cal. Mar. 31, 2011) (holding

13  relevance, improper legal conclusion, speculation, and argumentative objections are

14  duplicative of the summary judgment standard and, therefore, improper); *Holt v. Noble*

15  *House Hotels & Resort, Ltd.*, 370 F.Supp.3d 1158, 1164 (S.D. Cal. 2019). A district court

16  "must also rule on evidentiary objections that are material to its ruling." *Norse v. City of*

17  *Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).

18       Due to the volume of evidentiary objections, the Court addresses the objections

19  categorically, where appropriate.

20  **1. Defendants' Evidentiary Objections 1-6 to Plaintiff's Motion for Summary**
**Judgment**

21

22       Defendants objections 1 through 6 refer to portions of various depositions, which

23  Defendants argue Plaintiff failed to properly authenticate by failing to attach the signed

24  certificates of the court reporters.[6] ("Defs.' Evidentiary Objs.", ECF No. 44-2 at 2-8). In

25

26  _____

27  [6]     Defendants also object to Schumacher's declaration, which attempts to authenticate
those depositions, "[t]o the extent [he] attempts to introduce testimony as to the contents of
28  deposition exhibits or any other document without producing those documents" according

response, Plaintiff explains the certificates were omitted "in the interest of brevity and in relieving all parties – and the Court – of unnecessary paperwork." ("Pl.'s Resp. to Objs.," ECF No. 46 at 2). Plaintiff offers "to produce at the hearing all court reporters' certificates in support of the deposition testimony cited in Plaintiff's moving papers." (*Id.*) The Court notes that Defendants include portions from every deposition they object to in their own motion. (*See* "App'x of Evid. ISO Defs.' Opp'n to MSJ," ECF No. 44-1 at 1-6).

At the summary judgment stage, evidence need not be in admissible form for trial, it need only be capable of being presented in an admissible form. *See Celotex Corp.*, 477 U.S. at 324. Therefore, due to Plaintiff's offer to present the certifications and Defendants' reliance upon the same depositions, the Court finds the foundational issues presented with these depositions could be cured at trial. Accordingly, Defendants' evidentiary objections 1 through 6 are **overruled**.[7]

### 2. Defendants' Evidentiary Objection 7 to Plaintiff's Motion for Summary Judgment

Defendants object and move to strike ¶ 18 of Schumacher's Declaration which authenticates the AME report. (Defs.' Evidentiary Objs. at 8). Defendants argue Plaintiff failed to disclose the AME report in her initial disclosures pursuant to Federal Rule of Civil

---

to the best evidence rule. (Defs.' Evidentiary Objs. at 1-8). The Court finds Schumacher's declarations make no such attempt and Defendants repeated, boilerplate objections are overruled on those grounds.

[7] Defendants rely on *Orr v. Bank of Am., NT & SA*, 285 F.3d 764 (9th Cir. 2002), for its argument that Plaintiff is required to produce signed certificates of court reporters to authenticate depositions. (Defs.' Evidentiary Objs. at 2-8). However, in *Orr*, the Ninth Circuit explains that "a district court's admission of unauthenticated evidence in a summary judgment motion is harmless error when the same item of evidence has been authenticated by an opposing party." 285 F.3d at 776 (citing *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994)). Consistent with *Orr*, because Defendants use the same depositions they object to in their own motion, (*see* App'x of Evid. ISO Defendant's Opp'n to MSJ, ECF No. 44-1 at 2-6), with the signed court reporter certificates attached, this argument is unpersuasive.

Procedure 26, and the Court should therefore exclude the report under Rule 37.  (*Id.* at 8-9).  Defendants raise these additional bases for their objection: failure to authenticate, relevance, cumulative, and completeness.  (*Id.* at 9).  Plaintiff opposes Defendants' objections, claiming that because the AME report was disclosed in Plaintiff's responses to Defendants' interrogatories, Defendants cannot claim surprise or prejudice.  (Pl.'s Resp. to Objs. at 2-3).

> ### i.  *Exclusion under FRCP 37(c)(1)*

Rule 26 holds that "a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defense, unless the use would be solely for impeachment[.]"  Fed. R. Civ. P. 26(a)(1)(A).  Furthermore, the party must supplement or correct its disclosure in a timely manner if it learns the initial disclosure was incorrect or incomplete.  Rule 26(e)(1).  If a party fails to provide information or identify a witness under Rule 26(a) or (e), the party "is not allowed to use that information or witness to supply evidence on a motion, … unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The noncompliant party bears the burden of showing a lesser sanction is better under the circumstances, and that party must " 'avail himself of the opportunity to seek a lesser sanction' by formally requesting one from the district court."  *Merch. v. Corizon Health, Inc.*, 993 F.3d 733, 741 (9th Cir. 2021) (quoting *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 705 (8th Cir. 2021)).

A district court has "wide discretion" regarding discovery, and that discretion is "particularly wide" when a party moves for exclusion under Rule 37(c)(1).  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014).  The Ninth Circuit has held that evidentiary exclusions are a harsh sanction, particularly when the exclusion is fatal to a claim.  *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012).  Therefore, when engaged in the harmlessness inquiry under Rule 37(c)(1), the court is

required to consider "whether the claimed noncompliance involved willfulness, fault, or bad faith" and "the availability of lesser sanctions." *Id.* In deciding whether to exclude evidence under Rule 37, "district courts have identified several factors to guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (internal citations, quotations, and alterations omitted).

Defendants argue Plaintiff failed to include the AME report in her initial disclosures in violation of Rule 26, and accordingly, Defendants ask for the report to be excluded under Rule 37. Defendants claim Plaintiff's failure "has deprived [them] of the opportunity to conduct discovery in connection with that AME report." (Defs.' Evidentiary Objs. at 8). Plaintiff rebuts that the AME report was disclosed in her response to Defendants' interrogatories Numbers 2 and 13. (Pl.'s Resp. to Objs. at 2-3). Additionally, Plaintiff points to deposition testimony that demonstrates Defendants were aware of the AME report. (*See* Declaration of Paul Gleason In Support of Defs.' MSJ Opp'n, "Gleason Decl.", ¶ 2, Ex. I-A (Lewis Depo.), ECF No. 44-1 at 215:11-216:10). The AME report is also vital to Plaintiff's case, as it is Plaintiff's only physical evidence that supports the claim that Defendants had knowledge of her need for additional medical leave beyond October 21, 2019. (*See* Pl.'s MSJ at 12-13).

It strains credulity to state that Defendants were surprised by the AME report, because it was disclosed in Plaintiff's responses to interrogatories, and Defendants had the opportunity to question Plaintiff about the report in her deposition nearly six months *before* bringing their objection. Additionally, the report is vital to Plaintiff's case and Defendants have failed to offer any explanation as to how Plaintiff's failure to disclose was done out of willfulness, fault, or bad faith. For the foregoing reasons the Court finds, any violation of Rule 26 by failing to include the AME report in Plaintiff's initial disclosures was harmless and not subject to Rule 37(c)(1) sanctions.

*ii.*    *Failure to authenticate, relevance, cumulative, and completeness*

Defendants also claim the AME report was not properly authenticated by Schumacher, as he "does not represent that it is a true and correct copy" or that "he has any personal knowledge" of the contents of the reports.  (Defs.' Evidentiary Objs. at 9).  However, the AME report is also authenticated by Diamond's declaration, and Diamond was served with the AME report on October 8, 2019.  (Diamond Decl. at ¶ 11).  Notably, Defendants do not contest the AME report as authenticated by Diamond.  Nonetheless, at the summary judgment stage, the court focuses not on the admissibility of the evidence's form but on the admissibility of its contents.  *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001).  Even if the report could not be authenticated by Schumacher, the documents could be made admissible at trial by authentication, or their contents could be admitted through witness testimony.

Defendants further object to the AME report as cumulative and on the basis of relevance, arguing it "is of no relevance, as it is undisputed that Plaintiff never provided it to CoreCivic and does not state whether Plaintiff ever intended to work, her need for any specific accommodations, or her job restrictions."  (Defs.' Evidentiary Objs. at 9).   A central question in this case is whether Defendants were aware of Plaintiff's ongoing temporarily permanently disabled status at the time of her termination.  The AME report, which was indisputably sent to Defendants' third-party administrator and attorney is evidence that Plaintiff was not ready to return to work at the time of her termination.  Defendants' objections on these bases fail.

Last, Defendants object to the AME report because Plaintiff has failed to submit a complete copy of the report.  Federal Rule of Evidence ("FRE") 106 states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.  "[T]he rule of completeness is designed to prevent the distortion that inevitably results when only one portion of a document is admitted into evidence.  *See United States v. Callicott*, 92 F.3d

973, 982-83 (9th Cir. 1996).  However, FRE 106 does not require the original submission of a document to be complete; rather, it allows the other party to demand it be made complete.  *See United States v. Avenatti*, 559 F.Supp.3d 274, 281 (S.D.N.Y. 2021) ("[the rule of completeness] provides that a court should *permit* the introduction of certain writings or statements 'that in fairness ought to be considered' when other writings or statements are offered; it does not call for *exclusion* of the writings or statements that are offered in the first instance.").  Therefore, Plaintiff is not necessarily required to submit the AME report in its entirety absent a request from Defendants.  Accordingly, for the above reasons, Defendants' objection is **overruled**.

### 3.   Defendants' Evidentiary Objections 8-9 to Plaintiff's Motion for Summary Judgment

Plaintiff requests judicial notice of two civil complaints, both involving CoreCivic as a party.  (ECF No. 40-6).  Defendants' objections 8 and 9 are in reference to those complaints, which are attached as exhibits to Schumacher's declaration, arguing Schumacher lacks personal knowledge, the complaints lack relevance, the complaints are hearsay, and the complaints are not judicially noticeable.[8]  (Defs.' Evidentiary Objs. at 9-11).  Plaintiff contends personal knowledge and hearsay are inapplicable to a matter of judicial notice.  Plaintiff further argues the cases are relevant because they involve similar claims from similar parties occurring at the same facility.  (Pl.'s Resp. to Objections at 3).

Courts may take judicial notice of facts that are generally known within the territorial jurisdiction of the trial court, or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  While the complaints themselves are judicially noticeable, Plaintiff is not asking the Court to take judicial notice of the existence of the complaints but to the content of the complaints in order to draw parallels and establish a pattern of conduct.  (Pl.'s Resp. to Objs. at 3).

---

[8]   Defendants expand on their opposition to judicial notice in their Objections to Plaintiff's Request for Judicial Notice.  (*See* ECF No. 44-3).

Plaintiff's request is not proper. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."); *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("a court may not take judicial notice of proceedings or records in another cause as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it"). Accordingly, Plaintiff's request for judicial notice is **denied**.

### 4. Defendants' Evidentiary Objections 10-20 to Plaintiff's Motion for Summary Judgment

Defendants' objections 10 through 20 pertain to portions of the Declaration of Michael Diamond. Defendants make a number of arguments, principally arguing Diamond is an undisclosed witness under Federal Rule of Civil Procedure 26, and the Court should exclude the undisclosed witness's testimony under Rule 37. (Defs.' Evidentiary Objs. at 11-28). Plaintiff claims she does not intend to call Diamond as a witness at trial, and he is, therefore, a percipient witness whose only purpose is to "authenticate documents for purposes of this motion." (Pl.'s Resp. to Objs. at 3). Additionally, Plaintiff argues if Diamond were called to testify, the testimony would be exempt from Rule 26 disclosure as solely for impeachment of Defendants' assertion as to not receiving Dr. Zink's AME report. (*Id.*)

As previously discussed, (*supra* IV.A.1.i), a party that fails to provide information or identify a witness pursuant to Rule 26, unless for impeachment purposes, "is not allowed to use that information or witness to supply evidence on a motion, … unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

As clearly established by Rule 26 and Ninth Circuit case law, excluding testimony offered "strictly for impeachment purposes" is improper. *See Gribben v. United Parcel Serv., Inc.*, 528 F3d 1166, 1171-72 (9th Cir. 2008) (finding that the district court erred for excluding testimony not disclosed at pre-trial discovery and offered "strictly for impeachment purposes"). To the extent that Diamond's impeachment testimony may have

some substantive evidentiary value, the Court will instruct the jury that the testimony may be considered solely for its impeachment value. *See id.* at 1171; *see also Equal Emp't Opportunity Comm'n v. Trans Ocean Seafoods, Inc.*, No. 15-1563-RAJ, 2017 WL 1022781, at \*4-5 (W.D. Wash. Mar. 16, 2017).

Additionally, Defendants' arguments that Diamond is an undisclosed witness is unpersuasive. Plaintiff previously included a declaration from Michael Diamond in support of her opposition to defendants' motion to dismiss. (*See* ECF No. 7-2). Plaintiff's use of a declaration from Diamond in its opposition to Defendants' motion to dismiss is evidence that Defendants were put on notice of Diamond's involvement in the case, and Plaintiff's reliance on his testimony, as early as October 13, 2021. This notice gave Defendants the opportunity to prepare their case with Diamond in mind, well before the initial disclosure deadline. Furthermore, Diamond's declaration is used to authenticate documents central to this motion, and facts to which he has personal knowledge. Accordingly, Defendants' argument that Diamond is an undisclosed witness fails.

Defendants also object to specific portions of Diamond's declaration as speculative and lacking personal knowledge. (Defs.' Evidentiary Objs. at 12-29). For example, Defendants object to Diamond's statement: "I believe defendant had access to *all* of Ms. Lewis' medical records, including many which were not directly related to the WC matter or her leave of absence but were produced nonetheless." (*Id.* at 26-27). The Court finds this statement is speculative, however, to the extent Diamond's declaration is speculative, the Court does not rely on those portions in its ruling. Therefore, Defendants' objections to Diamond's declaration are moot on those grounds. Defendants also recite the same relevance and cumulative objections in Objections 10-20. That is, 'Diamond's testimony is irrelevant as he admits he was never involved in the present action in any capacity, which would include any advisement or counsel to Plaintiff regarding the interactive process or FMLA/CFRA leaves of absence." (*See e.g.* Defs.' Evidentiary Objs. at 12, 14, 17). In addition to being duplicative of the summary judgment standard, Diamond's declaration, his present sense impression, and the facts that he testifies to are relevant to the ultimate

issues underlying this matter.  Furthermore, any objections for lack of foundation are capable of being cured at trial, and therefore not proper at this juncture.  *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (holding the contents of the plaintiff's diary admissible for purposes of summary judgment because the contents would be admissible at trial through the plaintiff's personal knowledge).

The remainder of Defendants' objections are "boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *Capitol Recs., LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010) (quoting *Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009). Accordingly, the Court finds that it is "unnecessary and impractical . . . to methodically scrutinize each objection and give a full analysis of each argument raised." *Id.* Accordingly, Defendants' objections 10-20 are **overruled**.

### 5.  Defendants' Objection 21 to Plaintiff's Motion for Summary Judgment

Defendants' objection 21 is the first of several objections to Paragraph 5 of Plaintiff's declaration.  (Defs.' Evidentiary Objs. at 30).  This portion of Plaintiff's declaration pertains to a phone call she had with Lashlee, in which Lashlee explained how Plaintiff's leave would be treated and what documentation was required of her.  (Lewis Decl. at ¶ 5).  Defendants object and move to strike the entire paragraph under the "sham affidavit rule," citing inconsistencies between Plaintiff's declaration and her prior deposition testimony.  (*Id.* at 30-31).  Defendants also raise grounds for lack of foundation, hearsay, relevance, and cumulative evidence.  (*Id.* at 31).

The "sham affidavit rule" holds that "a party cannot create an issue of fact by an affidavit contradicting his [or her] prior deposition testimony."  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).  This rule precludes a party from "rais[ing] an issue of fact simply by submitting an affidavit contradicting his [or her] own prior testimony," which "would greatly diminish the utility of summary judgment as a procedure

for screening out sham issues of fact." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  However, the sham affidavit rule should be applied with caution "because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).  For example, "newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham." *Id.* at 1081 (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999)).  And, even if there exist minor inconsistencies, " 'the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.' " *Van Asdale*, 577 F.3d at 999 (quoting *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995)).

Upon a thorough review of Plaintiff's declaration, Plaintiff's prior deposition testimony, and Defendants' arguments, the Court finds no material inconsistency to warrant striking this portion of Plaintiff's declaration.  Defendants' point to a number of alleged inconsistent statements, without clearly articulating how Plaintiff's deposition testimony contradict her declaration.  However, to the extent that Defendants rely on Plaintiff's declaration to assert that she was aware that she was on FMLA leave, this is unpersuasive as throughout her deposition, she asserted that she believed she was on WC.  Furthermore, any minor inconsistencies noted by Defendants' can plausibly be attributed to confusion, and are better addressed at trial rather than the Court making a credibility determination at this phase in the proceedings.

Defendants other evidentiary grounds as to this paragraph of Plaintiff's declaration similarly fail.  Defendants' hearsay objection is unpersuasive, because, to the extent any of Lashlee's statements to Plaintiff are offered for the truth, they would fall under the party opponent hearsay exception as Lashlee was "[Defendants'] agent or employee,' and the statements were made "within the scope of that relationship," as she spoke to Plaintiff in

her capacity as an HR manager.   Fed. R. Evid. 801(d)(2)(D).   The remainder of the objections are "boiler-plate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *Capitol Recs., LLC*, 765 F.Supp.2d at n.1.   Accordingly, in light of the caution that must be exercised with regard to the sham affidavit rule, Defendants' objection is **overruled**.

### 6. Defendants' Evidentiary Objections 22-23 to Plaintiff's Motion for Summary Judgment

Defendants' objections 22 and 23 pertain to paragraphs 7 and 8 of Plaintiff's declaration, respectively.   (Defs.' Evidentiary Objs. at 32-33).   In paragraph 7, Plaintiff describes when and why she retained Michael Diamond to represent her in the WC claim. (Lewis Decl. at ¶ 7).   In paragraph 8, Plaintiff describes receiving a letter from CorVel, informing her that it would be handling her WC claim on behalf of CoreCivic.   (*Id.* at ¶ 8). Both of Defendants' objections are raised on grounds of relevance and cumulative evidence.   (Defs.' Evidentiary Objs. at 32-33).

Defendants fail to articulate why either paragraph is cumulative.   (*Id.*)   As for relevance, Defendants claim it is irrelevant that Plaintiff hired an attorney to represent her in the WC claim and it is also irrelevant that CorVel represented Defendants in that claim. (*Id.*)   The Court is not persuaded by these arguments.   For evidence to be relevant, it need only "ha[ve] a tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."   Fed. R. Evid. 401. Here, a question that permeates several causes of action is whether Plaintiff engaged in the interactive process.   If Plaintiff believed she was supposed to communicate with CorVel, as a representative of Defendants, then the fact is of consequence in determining whether Plaintiff engaged in the interactive process, and the letter and Plaintiff's steps to hire an attorney make that fact more probable.   Accordingly, Defendants objections are **overruled**.

///

///

///

### 7. Defendants' Evidentiary Objections 24-29 to Plaintiff's Motion for Summary Judgment

Defendants' objections 24 through 29 pertain to paragraphs 9 through 14 of Plaintiff's declaration, based on the "sham affidavit rule," but also based on hearsay, relevance, speculation, and improper lay opinion. (Defs.' Evidentiary Objs. at 33-43). These objections are substantially the same as Defendant's objection 21. Therefore, the Court's reasoning, (*supra* IV.A.5), similarly applies. Accordingly, Defendants' objections are **overruled**.

### 8. Defendants' Evidentiary Objections 30-31 to Plaintiff's Motion for Summary Judgment

Defendants' objections 30 and 31 pertain to paragraphs 15 and 16 of Plaintiff's declaration. (Defs.' Evidentiary Objs. at 43-44). In paragraph 15, Plaintiff explains that she intended to return to work after her medical leave and believed she would be able to do so after she was cleared by a doctor. (Lewis Decl. ¶ 15). In paragraph 16, Plaintiff describes herself as a 65-year-old African American female, then explains that her earning capacity was irreparably harmed by her termination, though Plaintiff does not claim she was terminated because of her status as a 65-year-old African American female. (*Id.* at ¶ 16). Defendants object to these statements, claiming they are speculative, lack personal knowledge, and lack relevance. (Defs.' Evidentiary Objs. at 43-44). Defendants also object to paragraph 16 as an improper opinion. (*Id.* at 44). The Court does not rely on these statements. Accordingly, Defendants' objections are **overruled as moot**.

## B. Defendant's Knowledge of the AME Report

Ther crux of the the instant motion turns on whether Defendants had actual or imputed knowledge of Plaintiff's AME report prepared by Dr. Zink as it is dispositive of whether Plaintiff engaged in the interactive process and requested accommodation, affecting the analysis for all Plaintiff's claims. The Court will discuss Defendants' actual and imputed knowledge in turn.

///

3:21-cv-01385-JAH-BGS

### 1. Defendants' Actual Knowledge Regarding the AME Report

Plaintiff argues Defendants received the AME report through Stacy Bickler, their attorney in the WC matter. (Pl.'s MSJ Reply at 3). As previously mentioned, a declaration of service shows the AME Report was served on Michael Anaple, Michael Diamond, and Stacy Bickler on October 8, 2019. (Schumacher Decl., ¶ 20, Ex. 19, ECF No. 40-2 at 213). However, while Bickler states that he received the AME report, he states he did not personally provide it to Defendants, nor is he aware of anyone in his office who did. (Bickler Decl. at ¶ 3). On the other hand, Plaintiff's WC attorney, Michael Diamond, states there is "no question that [CoreCivic] was privy to this information, because [CoreCivic] was a party to Ms. Lewis' workers' compensation claim … the AME report was served on [CoreCivic] and its agents and me simultaneously." (Diamond Decl. at ¶ 12). However, the AME report's declaration of service does not list Defendants directly. Furthermore, Plaintiff provides no evidence to refute Bickler's claim that he never gave the AME report to CoreCivic. Accordingly, based on the motions and evidence before the Court, the Court cannot determine that Defendant's had actual knowledge of the AME report before terminating Plaintiff's employment.

### 2. Defendants' Imputed Knowledge Regarding the AME Report

To support her claim that knowledge of the AME report is imputed to the Defendants by way of their relationships with CorVel and Bickler, Plaintiff relies on *Diaz v. Federal Express Corp. ("Diaz")*, No. CV 03-04765-SVW, 2004 WL 5402500 (C.D. Cal. Aug. 18, 2004), arguing that an employer has the ability to review an employee's WC records for medical information to determine whether she possesses a disability that requires accommodation. (Pl.'s MSJ at 22). The court in *Diaz* held that defendant was imputed to have knowledge of a report written by the plaintiff's psychologist because it was received by the defendant's agents, who were the defendant's employees specified to administer WC claims. *Diaz*, 2004 WL 5402500, at *9-13. The *Diaz* court relied, in part, on California Civil Code § 2332, which states: "As against a principal, both principal and

agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."

Defendants, on the other hand, argue that *Diaz* is factually distinct because, there, the employer's internal employees had access to the information, whereas here, CorVel is a third party. (Defs.' MSJ Opp'n at 22). Instead, Defendants argue that "while an employer may have the ability to access employee medical records that are maintained by a third party and may relate to a leave of absence or need for some other accommodation, *the employer has no duty or obligation to access such reports*." *Id.* at 21 (citing *Hoskins v. BP Products N. America, Inc.*, No. 2:13-cv-0574-SVW-AJW, 2014 WL 116280, at *9 (C.D. Cal. Jan. 9, 2014)) (emphasis in original).

An agent is defined as "one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295.[9]  A principal is imputed to have its agent's knowledge when that knowledge "can reasonably be said to be present in the mind of the agent while acting for the principal." *Columbia Pictures Corp. v. DeToth*, 87 Cal.App.2d 620, 631 (1948).  This rule is based on the principal that "the agent has a legal duty to disclose information obtained in the course of the agency and material to the subject matter of the agency, and the agent will be presumed to have fulfilled this duty." *Triple A Mgmt. Co. v. Frisone*, 69 Cal.App.4th 520, 534-35 (1999).  Even when the agent fails to communicate such knowledge to the principal, this rule is still effective.  *Columbia Pictures Corp.*, 87 Cal.App.2d at 630 ("agent may have been guilty of a breach of duty to his principal, yet the knowledge has the same effect as to third persons as though [the agent's] duty had been faithfully performed.").

When determining if a principal-agent relationship exists, courts look to the essential characteristics of an agency relationship: "(1) An agent or apparent agent holds a power to

---

[9]  The Court does not rely on Defendants' knowledge of the AME report in ruling on Plaintiff's interference claim under the FMLA.  Plaintiff's remaining claims arise under California law.  Therefore, the Court looks to California's agency law.

alter the legal relations between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him." *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal.App.4th 937, 964 (2007).  With these characteristics in mind, the "primary test" of an agency relationship is the principal's right to control the agent's actions.  *Cox v. Kaufman*, 77 Cal.App.2d 449, 452 (1946).  When looking for evidentiary support for an agency relationship, the court looks to the "relation of the parties as they in fact exist by agreement or acts," and by whether the parties "intended to create an agent/principal relationship." *Ralphs Grocery Co. v. Victory Consultants, Inc.*, 17 Cal.App.5th 245, 262-63 (2017) (quoting *APSB Bancorp v. Thornton rant*, 26 Cal.App.4th 926. 932-33 (1994)).  "To sufficiently plead the existence of an agency relationship, a plaintiff must allege facts demonstrating the principal's control over its agent."  *Lansdown v. Bayview Loan Servicing, LLC*, No. 22-cv-00763-TSH, 2023 WL 2934932, at *8 (N.D. Cal. Apr. 12, 2023) (quoting *Akins v. Seterus, Inc.*, No. 2:16-cv-01656-TLN-KJN, 2019 WL 4243221, at *4 (E.D. Cal. Sept. 6, 2019)).  Thus, unless the evidence is so clear that there is only one reasonable inference as to whether the agency relationship exists, that question is ultimately reserved for the trier of fact and not the court.  *Akins*, 2019 WL 4243221, at *4.

#### i.   *Defendants' Relationship with CorVel*

As evidence to show an agency relationship existed between Defendants and CorVel, Plaintiff offers a statement reflecting her understanding of the relationship between Defendants and CorVel, (*see* Lewis Decl. at ¶ 8), and provides a letter from CorVel informing her that it will be handling her WC claim on behalf of CoreCivic.  (Lewis Decl., ¶ 8, Ex. 13, ECF No. 40-2 at 185).   Additionally, several deposed witnesses acknowledge CorVel's role in the same way.  (*See, e.g.,* Lashlee Depo. at 87:13-22; Cooper Depo. at 22:6-15; Schumacher Decl., ¶ 6, Ex. 5 (Deposition of Steve Scott, "Scott Depo."), ECF No. 44-2 at 115, 88:7-20).   However, the only evidence offered of communication directly between Defendants and CorVel is an email from Emily Lao at CorVel to Lashlee,

informing her that Plaintiff's WC claim remained denied as of October 15, 2019, and that CorVel was still awaiting the AME report from Dr. Zink.  (Schumacher Decl., ¶ 16, Ex. 15, ECF No. 40-2 at 191).

No evidence is introduced that definitely establishes in any detail the relationship between Defendants and CorVel, nor the extent of CorVel's authority and duties.  Therefore, the facts are not such that only one reasonable inference can be made as to whether an agency relationship existed between Defendants and CorVel.  As a result, a dispute exists as to whether an agency relationship existed, and consequently, whether Defendants are imputed to have knowledge of the AME report through their relationship with CorVel.

### ii.    Defendants' Relationship with Stacy Bickler

Plaintiff also argues that knowledge can be imputed to Defendants through their attorney, Stacy Bickler.  (Pl.'s MSJ at 23; Pl.'s MSJ Reply at 3-6).

The Ninth Circuit has repeatedly upheld that,"[o]rdinarily, a lawyer is a client's agent and, consistent with agency law, clients 'are considered to have notice of all facts known to their lawyer-agent.' " *In re Perle*, 725 F.3d 1023, 2027 (9th Cir. 2013) (quoting *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir. 1989); *Mackey v. Hoffman*, 682 F.3d 1247, 1253 (9th Cir. 2012) ("the attorney and the client have an agency relationship under which the principal is bound by the actions of the agent").  California courts take the same approach.  *See, e.g. PLCM Group v. Drexler*, 22 Cal.4th 1084, 1092 (quoting *Kay v. Ehrler*, 499 U.S. 432, 435-36) ("the word 'attorney' assumes an agency relationship");  *Rosenaur v. Scherer*, 88 Cal.App.4th 260, 283 (2001) (holding "attorneys are agents of their client"); *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal.4th 988, 1013 (2015) (Liu, J., concurring) (the agency relationship between client and attorney is well-established).

As evidence of an attorney-client agency relationship, Plaintiff provides a letter sent from Bickler to Michael Diamond, stating: "[Bickler's] office has been retained by CoreCivic, to provide a defense in the above referenced workers' compensation action."

(Diamond Decl., ¶ 9, Ex. 17, ECF No. 40-2 at 204).  Additionally, Defendants provide a declaration from Bickler in which he affirms she represented "the employer" in Plaintiff's WC matter.  (Bickler Decl. at ¶ 2).  This is undisputed evidence that Bickler represented Defendants in his capacity as an attorney, making him Defendants' agent.

Additionally, Plaintiff offers evidence to demonstrate Bickler had knowledge of the AME report.  The declaration of service attached to the AME report shows the report was served on Bicker's office on October 8, 2021.  (AME Report at 213).  In fact, Bickler admits his office received the report, though he does not specify what date.  (Bickler Decl. at ¶ 3).  Therefore, because Bickler received the AME report, that knowledge is imputed to Defendants.  *See Triple A Mgmt. Co.*, 69 Cal.App.4th at 534-35.  Accordingly, the Defendants will be deemed to have knowledge of the AME report as if Bickler had communicated it to them for purposes of this motion.

## C.  Plaintiff's Motion for Partial Summary Judgment

### 1.  Plaintiff's Disability Status

#### i.  *Whether Plaintiff's Request is Procedurally Proper*

First, Plaintiff moves for summary judgment that "Ms. Lewis was 'disabled' and Defendant[s] regarded her as 'disabled' within the meaning of the Fair Employment and Housing Act."  (Pl.'s MSJ at 19).  Plaintiff argues the multiple doctor's notes she submitted, which deemed her "totally temporarily disabled," establish this element without dispute.  (*Id.*)  Defendants do not dispute Plaintiff was disabled in their opposition.[10]  Instead, Defendants argue the motion itself is improper as to this request because it seeks judgment on just part of a claim.  (Defs.' MSJ Opp'n at 18-19).

---

[10]    While Defendants do not contest that Plaintiff was disabled, they do argue Plaintiff failed to provide any physician's note or medical certification that would extend her leave past October 21, 2019.  (Defs.' MSJ Opp'n at 26).  This, of course, relates to the dispute over whether Defendants are to be imputed with knowledge of the AME report.  This issue was addressed above, and Defendants are to be imputed with knowledge of the report.  (*See supra* IV.B.2).

Rule 56 was amended in 2010 to read: "A party may move for summary judgment, identifying each claim or defense – *or the part of each claim or defense* – on which judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). The Advisory Committee Note to the 2010 Amendment explains subdivision (a) was amended to "make clear [that]...summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense. The subdivision caption adopts the common phrase 'partial summary judgment' to describe disposition of less than the whole action, whether or not the order grants all the relief requested by the motion." Fed. R. Civ. P. 56(a) advisory committee's note to the 2010 amendment. Defendants' reliance on cases decided prior to the 2010 amendment to Rule 56 is mistaken.

### ii.    Whether Plaintiff is Disabled

As to Plaintiff's motion to find her disabled, Plaintiff offers California's FEHA definition of "mental disability," explaining Plaintiff submitted multiple doctor's notes outlining her disability, which she asserts is not disputed. (Pl.'s MSJ at 19-20). The evidence Plaintiff provides in her motion to support this request is found throughout the record. (*See* Lewis Decl. at ¶ 5 (Plaintiff's declaration that she was instructed by HR to visit the WC doctor, who would then directly provide documentation to Defendants); Schumacher Decl., ¶ 13, Ex. 12, ECF No. 40-2 at 183 (the Dr. Zeidman note stating Plaintiff was not expected to return to work until October 21, 2019); AME Report (and attached declaration of service)). Defendants do not contest the factual allegations that Plaintiff was disabled or that Defendants were aware of her disability. (Defs.' MSJ Opp'n at at 18-19). To the contrary, Defendants admit they received and acknowledged Plaintiff's request for FMLA leave, (*id.* at 11), and they received Dr. Zeidman's note on August 5, 2019, (*id.* at 13). Therefore, the Court finds Plaintiff has met her burden to show she was "disabled" within the meaning of California's FEHA, and that Defendants regarded her as disabled. Accordingly, Plaintiff's motion for partial summary judgment is **granted** as to this request.

///

### 2.  Request for Accommodation

Plaintiff seeks partial summary judgment that "Ms. Lewis requested an accommodation for her disability," arguing the AME report from Dr. Zink requested an accommodation of extended leave on behalf of Plaintiff.  (Pl.'s MSJ at 20).  Defendants again argue Plaintiff's motion is improper because it only seeks summary judgment on part of a claim, (Defs.' MSJ Opp'n at 18-19), and that knowledge of the AME report cannot be imputed to them, (*id.* at 20-22).  Both of Defendants' arguments fail for the reasons set forth above.  (*See supra* IV.B.1-C.1).

The California Legislature has expressly endorsed the Equal Employment Opportunity Commission's ("EEOC") Enforcement Guidance into the FEHA.  *See* Cal. Gov. Code § 12926.1(e) ("The Legislature affirms the importance of the interactive process between the applicant or employee and the employer in determining a reasonable accommodation, as this requirement has been articulated by the Equal Employment Opportunity Commission in its interpretive guidance of the federal Americans with Disabilities Act of 1990.").  The EEOC's Enforcement Guidance states, in part:

> 2. May someone other than the individual with a disability request a reasonable accommodation on behalf of the individual?
>
> Yes, a family member, friend, *health professional, or other representative may request a reasonable accommodation on behalf of an individual with a disability*. Of course, the individual with a disability may refuse to accept an accommodation that is not needed.
> …
> Example B: An employee has been out of work for six months with a workers' compensation injury. The employee's doctor sends the employer a letter, stating that the employee is released to return to work, but with certain work restrictions. (Alternatively, the letter may state that the employee is released to return to a light duty position.) *The letter constitutes a request for reasonable accommodation*.

Gary S. Marx, *2 Disability Law Compliance Manual*, Appendix B9 Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (West 2023).

1
2
3
4
5

Here, it is undisputed that Plaintiff attended an Agreed Medical Evaluation, performed by Dr. Robert Zink, in connection with her WC claim on September 12, 2019. (Lewis Decl. at ¶ 13).  Dr. Zink created a report based on that evaluation, which was served on Defendants' attorney, Stacy Bickler, on August 8, 2019.[11]  (AME Report at 213; Bickler Decl. at ¶ 3).  In his report, Dr. Zink states:

6
7
8
9
10
11
12
13
14
15
16
17
18

> My opinion is that Ms. Lewis has been Temporarily Totally Disabled on a psychological basis from the time she left work at the end of the day on 4/20/19 through the present time.
> …
> I expect that period of TTD to last at least another 6 to 8 weeks…
> …
> I expect that Ms. Lewis will be able to return to her usual and customary occupation for the employer in the future at another location where she is not under the supervision of Ms. Murphy.
> …
> I expect Ms. Lewis will require further consideration of psychiatric medication for a number of additional months as chosen by her treating psychiatrist.
> …
> My opinion is that Ms. Lewis requires additional psychotherapy of a group or individual nature on an approximate once a week basis for at least the next 2 to 3 months, hopefully during which time she can further recover.

19
20
21
22

(AME Report at 210-11).  Thus, the report comes from Plaintiff's health professional and plainly states her need for additional medical leave.  Moreover, it communicates the medical opinion that Plaintiff will be able to return to her duties after extended leave. Defendants do not dispute the conclusions of Dr. Zink, nor do they dispute that receipt of

23
24
25
26
27
28

[11]   Notably, this is well before Lashlee's October 22, 2019, letter to Plaintiff informing her that it was "critically important" to contact HR within ten days to arrange for Plaintiff's return to work or inform them of her current medical status.  (Lashlee Decl. ¶ 15, Ex. II-O, ECF No. 41-3 at 718).

such a report would constitute a request for accommodation.[12]  Instead, Defendants continue to rely on the argument that knowledge of the AME report cannot be imputed to them.  (Defs.' MSJ Opp'n at 2-24).  In light of the Court's ruling on that argument, (*see supra* IV.B.2), and because the AME report is a request for accommodation, the Court finds summary judgment is proper on this issue.  Accordingly, Plaintiff's motion for summary judgment, as it pertains to her request for accommodation, is **granted**.

### 3. Defendants' Obligation to Engage in the Interactive Process

Plaintiff seeks partial summary judgment that "Defendant was obligated to engage in a timely, good faith interactive process in response to Ms. Lewis' request for accommodation." (Pl.'s MSJ at 23).  Defendants principally argue they were not aware of Plaintiff's disability after October 21, 2019, and it was her burden to communicate her disability before Defendants' obligation to engage in the interactive process would be triggered.  (Defs.' MSJ Opp'n at 27).

The FEHA requires, when an employee has a known disability or medical condition that requires accommodation, a timely, good faith interactive process between employer and employee.  2 Cal. Code Regs. § 11069(a).  This duty is prompted when the employee requests accommodation for his or her disability or when the employer recognizes the need for one on its own.  *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001).  Furthermore, the employer's obligation to engage in the interactive process in good faith is continuous once the process has been initiated.  *Swanson v. Morongo Unified Sch. Dist.*, 232 Cal.App.4th 954, 971 (2014).  The scope of the employer's obligations during that interactive process are codified under Section 11069(c).  Defendants do not dispute that they had a duty under the FEHA statute.  (*See* Defs.' MSJ Opp'n at 25 ("CoreCivic's duty

---

[12]  Defendants also argue that Plaintiff failed to engage in the interactive process and ignored requests from Defendants for more information.  (Defs.' MSJ Opp'n at 26).  These arguments go toward whether Plaintiff engaged in the interactive process, not whether she requested reasonable accommodations.  Therefore, those arguments will be discussed in a subsequent section.  (*See infra* IV.C.4).

under California law was to engage in a good faith discussion with Plaintiff about her need for continuing accommodations.")).   Furthermore, Defendants are imputed to have the knowledge of their agent, Stacy Bickler, who possessed a copy of the AME report, (*see supra* IV.B.2), which states Plaintiff was temporarily totally disabled and required additional medical leave, (*see supra* IV.C.2).   Imputing knowledge of this report to Defendants, the Court treats the facts as though Defendants knew the report's contents.   As such, the contents of the AME report clearly communicate Plaintiff's medical condition and need for accommodation.   Therefore, Defendants are imputed to have knowledge of Plaintiff's ongoing medical condition as of August 8, 2019, when the AME was served on Bickler.   Accordingly, Plaintiff's motion for partial summary judgment as to Defendants having an obligation to engage in a timely, good faith interactive process in response to her request for accommodation is **granted**.

### 4. Defendants' Involvement in the Interactive Process

Plaintiff seeks partial summary judgment that "Defendant[s] failed to engage in a timely, good faith interactive process with Ms. Lewis in response to her request for accommodation." (Pl.'s MSJ at 24).   Plaintiff argues Defendants failed to consider Plaintiff's request for accommodation (by and through the AME report) and failed to initiate interactive dialogue about alternative accommodations.   (*Id.* at 25).   However, Defendants rebut that it was in fact Plaintiff who failed to engage in the interactive process. (Defs.' MSJ Opp'n at 25-26).   Defendants contend Plaintiff failed to show an accommodation was available and failed to communicate in good faith.   (*Id.* at 24-25).

Both employer and employee are required to engage in a timely, good faith interactive process once there is a known medical condition that requires accommodation. 2 Cal. Code Regs. § 11069(a).   Both parties "shall exchange essential information … without delay or obstruction of the process."   (*Id.*)   When the disability or need for accommodation is not obvious, the employer may request reasonable medical documentation from the employee.   *Id.* at § 11069(c)(2).   Communications between

employer and employee are preferred to be direct, as opposed to communicating through third parties.  *Id.* at § 11069(d)(4).

The Seventh Circuit has provided guidance for courts when analyzing a breakdown of the interactive process:

> [C]ourts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate *the cause of the breakdown* and then assign responsibility.

*Beck v. Univ. of Wis. Bd. of Regents ("Beck")*, 75 F.3d 1130, 1135 (7th Cir. 1996) (emphasis added).  The Ninth Circuit has relied on this guidance from *Beck*.  *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001).  Similarly, when the interactive process fails, the responsibility rests with the party who failed to participate in good faith.  *Gelfo v. Lockheed Martin Corp.*, 140 Cal.App.4th 34, 54 (2006).

As discussed above, Defendants sent Plaintiff a series of letters as the end of her non-FMLA leave was approaching, dated September 30, October 17, and October 22, 2019.  (Lashlee Decl. at ¶ 12-15).  Plaintiff responded to the first of those letters with a voicemail, stating she did not believe the requested documentation was necessary because of her understanding that she was on WC leave.  (*Id.* at ¶ 13).  However, Plaintiff failed to respond to the October letters.  (*Id.* at ¶ 13-15).  Even imputing knowledge of the AME report to Defendants which was served on their attorney on October 8, 2019, the subsequent October 17 and 22 letters from Defendant "initiate[d] discussion with [Plaintiff] regarding alternative accommodations."  *See* 2 Cal. Code Regs. § 11069(c)(1).

In the October 17 letter, Defendants told Plaintiff, "[W]e expect you to return to work when your leave expires on October 21, 2019…. This is to request once more that you contact me *immediately* if you are unable to return to your duties for any reason." (Lashlee Decl., ¶ 14, Ex. N, ECF No. 44-1 at 716) (italics in original).  Then, after receiving

no response from Plaintiff, Defendants similarly stated: "It is critically important that you contact me, Sherrie Lashlee, within ten (10) days from the date of this letter to make arrangements for your return to work or to advise us of your current medical status if you are unable to return to work." (Lashlee Decl., ¶ 15, Ex. O, ECF No. 441 at 719). Plaintiff failed to respond to these attempts to initiate the interactive process, and, in reference to being shown the September 30 letter at her deposition, Plaintiff stated: "I wasn't even reading that stuff anymore because I was under a doctor's care. I don't recall reading this letter." (Lewis Depo. at 146:12-15). The instant facts clearly indicate Defendants initiated and engaged in the interactive process. Based on these facts, there exists a dispute of material fact as to who is responsible for the breakdown of the interactive process, and Plaintiff's motion, as far as it seeks judgment that Defendants failed to engage in this process, is **denied**.

### 5. Plaintiff's Ability to Perform Her Job With Accommodation

Plaintiff seeks partial summary judgment that "Ms. Lewis was able to perform her job with or without accommodation." (Pl.'s MSJ at 25). Defendants oppose, arguing Plaintiff failed to suggest any reasonable accommodation that would have enabled her to perform her job. (Defs.' MSJ Opp'n at 27).

To succeed on her claim, Plaintiff must prove that she was able to perform her job with or without reasonable accommodation. *See Nadaf-Rahrov*, 166 Cal.App.4th at 977 (burden of proving ability to perform essential functions of job with accommodation rests with plaintiff). Therefore, the operative question is whether there existed a reasonable accommodation that would have enabled Plaintiff to perform the essential functions of her job. Under the FEHA, an employer has an affirmative duty to make reasonable accommodations for the disability of an employee if the employer knows of the disability, unless the employer can demonstrate, after the interactive process, that the accommodation would impose an undue hardship. 2 Cal. Code Regs. § 11068(a). The FEHA includes, under "Definitions," a non-exhaustive list of reasonable accommodations. *See id.* at § 11065(p)(2). One example listed is: "Providing a paid or unpaid leave for treatment and

recovery, consistent with section 11068(c)."  *Id.* at § 11065(p)(2)(M).   Section 11068(c) states:

> When the employee cannot presently perform the essential functions of the job, or otherwise needs time away from the job for treatment and recovery*, holding a job open for an employee on a leave of absence or extending a leave provided by the CFRA, the FMLA, other leave laws or the employer's leave plan may be a reasonable accommodation provided* that the leave is likely to be effective in allowing the employee to return to work at the end of the leave, with or without further reasonable accommodation, and does not create an undue hardship for the employer.

2 Cal. Code Regs. § 11068(c) (emphasis added).   However, the FMLA and CFRA only provide twelve weeks of medical leave.   29 U.S.C. § 2612(1); *Rogers v. Cnty. of Los Angeles*, 198 Cal.App.4th 480, 490 (2011) (holding plaintiff was not entitled to additional benefits after her twelve weeks of medical leave expired).   Furthermore, " '[r]easonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected.' "  *Hanson v. Lucky Stores*, 74 Cal.App.4th 215, 226-27 (1999) (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998)). An employer is not liable for terminating an employee who is unable to perform the essential duties of her job with or without accommodation.   *Nadaf-Rahrov*, 166 Cal.App.4th at 976; Cal. Gov. Code § 12940(1)-(2).

In the AME report, Dr. Zink opined: "I expect that Ms. Lewis will be able to return to her usual and customary occupation for the employer in the future at another location where she is not under the supervision of Ms. Murphy."  (*Id.* at 210).   Dr. Zink also stated: "Ms. Lewis requires additional psychotherapy of a group or individual nature on an approximate once a week basis for at least the next 2 to 3 months, hopefully during which time she can further recover."  (*Id.* at 211).   However, it is undisputed that Plaintiff was on medical leave for more than six months between April of 2019 and her eventual termination on November 4, 2019.   (Lewis Decl. at ¶¶ 4-14; Lashlee Decl. at ¶ 17).   That is twice as long as the twelve weeks prescribed by the FMLA.   Yet, Plaintiff still argues she "requested

only a temporary extension of her medical leave of absence in order to return to work," (Pl.'s MSJ at 26), which would amount to eight or nine months of total leave without any guarantees that she would be able to return at that point.   To succeed on her motion, Plaintiff would need to show there is no genuine dispute of material fact that she could perform the essential functions of her job with *reasonable* accommodation.   Plaintiff fails to meet this burden of showing her request for an additional two to three months of leave was *reasonable*.   Accordingly, Plaintiff's motion for partial summary judgment as to this issue is **denied**.

### 6.  Failure to Provide Reasonable Accommodation

Plaintiff seeks partial summary judgment that "Defendant[s] failed to grant Ms. Lewis a reasonable accommodation."  (Pl.'s MSJ at 26).   On the other hand, Defendants claim Plaintiff is responsible for the breakdown in the interactive process, which precludes her from succeeding on her claim that Defendants failed to grant accommodation.  (Defs.' MSJ Opp'n at 28).

Plaintiff brings a claim for failure to accommodate, which requires a showing that: "(1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., she can perform the essential functions of the position with or without an accommodation); and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Cuiellette v. City of Los Angeles*, 194 Cal.App.4th 757, 766 (2011) (quoting *Wilson v. Cnty. of Orange*, 169 Cal.App.4th 1185, 1192 (2009)).   Therefore, "the employee must establish that [the employee] requested an accommodation, and that the employee is not responsible for any breakdowns in the interactive process." *Hoskins*, 2014 WL 116280, at *9 (citing *Gelfo*, 140 Cal.App.4th at 54).   Significantly, "[i]f the interactive process breaks down because the employee fails to engage in discussions in good faith, the employee cannot establish a claim for failure to accommodate." *Id*. at *9.

Additionally, if the employee cannot be reasonably accommodated in her current position, the employer has an affirmative duty to look for other available positions for which she would be qualified. *Spitzer v. The Good Guys, Inc.*, 80 Cal.App.4th 1376, 1389

(2000). However, the employer is not required to reassign the employee if there are no vacant positions for which she is qualified. *Id.* "[T]he responsibility to reassign a disabled employee who cannot otherwise be accommodated does 'not require creating a new job, moving another employee, promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement' but it nevertheless does entail affirmative action." *Id.* at 1389 (quoting *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998) (internal citation omitted).

Here, there exists a genuine dispute of material fact regarding who is responsible for the breakdown of the interactive process. Plaintiff failed to respond directly to Defendants' letters, which were sent after Defendants' attorney received the AME report. On the other hand, Defendants failed to specifically address the accommodation requested in the AME report in their October 2019 letters. Accordingly, the questions of who is responsible for the breakdown, and whether one or both parties failed to act in good faith, are disputes of material fact which are properly decided by the trier of fact. Accordingly, Plaintiff's motion for partial summary judgment as it pertains to Defendants' failure to provide reasonable accommodations is **denied**.[13]

### 7. Discrimination Based on Disability Status

Plaintiff seeks partial summary judgment that "by failing to grant Ms. Lewis a reasonable accommodation, Defendant[s] discriminated against Ms. Lewis based on her disability." (Pl.'s MSJ at 26-27). To succeed on a disability-based discrimination claim, Plaintiff must prove she was subject to an adverse employment action because of her disability or perceived disability. *Sandell v. Taylor-Listub, Inc.*, 188 Cal.App.4th 297, 310 (2010). Plaintiff claims she was subjected to an adverse employment action when she was

---

[13]     Defendants also argue in their motion for summary judgment that Plaintiff's request for additional leave is unreasonable because she had already exhausted her twelve weeks of FMLA before October 21, 2019. (Defs.' MSJ at 19). This argument will be further addressed below. (*See infra* IV.D.1).

terminated instead of receiving an accommodation. (Pl.'s MSJ at 27). In light of the Court's rulings above regarding a breakdown in the interactive process, the Court finds the facts preclude summary judgment for Plaintiff on this issue. Accordingly, Plaintiff's motion for partial summary judgment, as it pertains to Defendants' discriminating against her based on her disability is **denied**.[14]

### 8. Retaliation Based on Request for Accommodation

Plaintiff seeks partial summary judgment that Defendants "retaliated against Ms. Lewis because she requested an accommodation in the form of extended medical leave." (Pl.'s MSJ at 27). Plaintiff argues that because she requested accommodation through the AME report, and she was subsequently terminated "for taking leave for her disability," she is entitled to summary judgment on this issue. (*Id.* at 28). Defendants argue they provided a legitimate, nondiscriminatory reason for the termination, being Plaintiff's failure to respond to the October 2019 letters asking her for information regarding her plans to return to work. (Defs.' MSJ Opp'n at 29). In light of the Court's rulings above regarding the Parties' engagement in the interactive process and because questions remain as to whether Defendants failed to provide reasonable accommodation, the Court finds summary judgment inappropriate as to whether Defendants retaliated against Plaintiff because of her request for accommodation. Accordingly, Plaintiff's motion for partial summary judgment is **denied** as to this request.[15]

### 9. Hardship on Defendants if Accommodation were Granted

Plaintiff seeks partial summary judgment that Defendants "thirty-first affirmative defense fails because granting Ms. Lewis' request for Accommodation would not have

---

[14]     Plaintiff's claim for employment discrimination based on her disability in violation of the FEHA is discussed in more detail as it relates to Defendants' motion for summary judgment. (*See infra* IV.D.3).

[15]     Plaintiff's claim for retaliation based on her disability in violation of the FEHA is discussed in more detail as it relates to Defendants' motion for summary judgment. (*See infra* IV.D.2).

caused any undue hardship." (Pl.'s MSJ at 28). Defendants' thirty-first affirmative defense reads: "To the extent Plaintiff claims that she requested an accommodation, such request was unreasonable and would have produced an undue hardship." ("Affirmative Defenses," ECF No. 11 at 28, ¶ 31). Defendants fail to address this issue in their Opposition.

California law explains that it is the employer's burden to demonstrate an undue hardship *after* engaging in the interactive process:

> An employer . . . has an affirmative duty to make reasonable accommodation(s) for the disability of any . . . employee if the employer . . . knows of the disability, unless the employer . . . can demonstrate, *after engaging in the interactive process*, that the accommodation would impose an undue hardship.

2 Cal. Code Regs. § 11068(a) (emphasis added). Because a dispute of material fact exists as to who is responsible for the breakdown of the interactive process in this case, there also exists a dispute of material fact as to whether accommodating Plaintiff would have imposed an undue hardship on Defendants. Accordingly, Plaintiff's motion for partial summary judgment as to Defendants' thirty-first affirmative defense is **denied**.

### 10. Wrongful Termination Claim

Last, Plaintiff seeks summary adjudication of her wrongful termination claim as a matter of law. (Pl.'s MSJ at 30). In light of the Court's denial of Plaintiff's requests as to her claims for discrimination, (*see supra* IV.C.7), and retaliation, (*see supra* IV.C.8), this request is similarly **denied**.

### D. Defendants' Motion for Summary Judgment

#### 1. Plaintiff's First and Second Causes of Action

Defendants seek summary judgment on Plaintiff's claims for interference in violation of the FMLA and CFRA. (Defs.' MSJ at 17-18). Defendants argue Plaintiff's claims fail for three reasons: (1) Plaintiff was not entitled to the extended leave, (2) Plaintiff was informed of her rights and obligations, and (3) Plaintiff's failure to communicate with Defendants is fatal to her claim. (*Id.* at 18-19). Plaintiff does not respond directly to Defendants' first argument in her opposition.

The FMLA was enacted in 1993, in part, to "entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."  29 U.S.C. § 2601(b)(2). Additionally, "CFRA adopts the language of the FMLA and California state courts have held that the same standards apply."  *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 n.4 (9th Cir. 2003).

The FMLA creates two substantive rights for employees: (1) the employee has a right to use a certain amount of leave for protected reasons, and (2) the employee has a right to reinstatement after using that protected leave.  *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a), 1614(a)).  When these rights have been violated, an employee can recover under the interference or entitlement theory.[16]  *See Zin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir. 2003); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002) ("Courts have recognized two theories for recovery on FMLA claims under § 2615, the retaliation or discrimination theory and the entitlement or interference theory").

"The right to reinstatement guaranteed by 29 U.S.C. § 1614(a)(1) is the linchpin of the entitlement theory because 'the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends. ' "  *Sanders v. City of Newport*, 657 F.3d  772, 778 (9th Cir. 2011) (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)).  Therefore, failing to reinstate an employee who was on FMLA leave to her original or equivalent position

---

[16]  The "interference" theory is based on 19 U.S.C. Section 2615(a)(1), which states: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any rights established by the FMLA.  The Ninth Circuit has held that the *McDonnell Douglas* burden-shifting framework applies to other employment-related causes of action, but does not apply to these "interference" claims.  *Bachelder*, 259 F.3d at 1125 (holding an employee "can prove this claim, as one might any ordinary statutory claim").

constitutes a *prima facie* denial of the employee's FMLA rights.  *Sanders*, 657 F.3d at 778. The Ninth Circuit has summarized an employee's prima facie case where the employer fails to reinstate after FMLA leave into five elements: "(1) [s]he was eligible for the FMLA's protections, (2) [her] employer was covered by the FMLA, (3) [s]he was entitled to leave under the FMLA, (4) [s]he provided sufficient notice of [her] intent to take leave, and (5) [her] employer denied [her] FMLA benefits to which [s]he was entitled." *Id.* (quoting *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)).

However, the employee's right to reinstatement is not without limits.  *See* 29 U.S.C. § 2614(a)(3)(B) ("Nothing in this section shall be construed to entitle the employee to … any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave."). Specifically, the FMLA dictates that an employee "shall be entitled to a *total of 12 workweeks* of leave during any 12-month period … (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(1) (emphasis added).  The Ninth Circuit has explained:

> The twelve-week limitation on employees' protected leave time – protected in the sense that the employee is entitled to reinstatement upon the end of the leave – as well as other provisions in the final Act, demonstrates that Congress wanted to ensure that employees' entitlement to leave and reinstatement did not unduly infringe on employers' needs to operate their businesses efficiently and profitably.

*Bachelder*, 259 F.3d at 1120.  Therefore, California courts have held employees are not entitled to additional benefits after the statutorily prescribed twelve weeks of leave have been exhausted.  *See Rogers*, 198 Cal.App.4th at 490 (holding plaintiff's right to reinstatement expired when her 12-week protected CFRA leave expired); *Neisendorf v. Levi Strauss & Co.*, 143 Cal.App.4th 509, 518 (2006) (holding employer did not have a duty to reinstate employee after 14-week medical leave).

Here, Plaintiff's First and Second Causes of Action fall into the "interference" category. (*See* Comp. ¶¶ 28-51).  Plaintiff alleges the substantive right violation for each

claim was her termination, or rather, Defendants' failure to reinstate her.  (*Id.* at ¶¶ 33, 46). Factually, it is undisputed that Plaintiff requested FMLA leave in late April of 2019. (Lewis Decl. at ¶ 4; Lashlee Decl., ¶ 4, Ex. D (Plaintiff's Request for FMLA Leave), ECF No. 41-3 at 684).  It is also undisputed that Plaintiff's FMLA leave request was approved. (Lewis Decl. at ¶ 6; Lashlee Decl., ¶ 12, Ex. M (September 30 Letter), ECF No. 41-3 at 712).  Finally, it is undisputed Plaintiff was on leave for more than six months between April of 2019 and her eventual termination on November 4, 2019.  (Lewis Decl. at ¶¶ 4-14; Lashlee Decl. at ¶ 17).  Plaintiff fails to provide any reason why she should be entitled to reinstatement under the FMLA and CFRA, after she exceeded the statutorily prescribed twelve-week period.  Therefore, in light of the law and Plaintiff's undisputed six-month medical leave, the Court finds summary judgment is appropriate on these claims, **granting** Defendants' motion, and dismissing Plaintiff's First and Second Causes of Action.

### 2.  Plaintiff's Third Cause of Action

Defendants seek summary judgment on Plaintiff's retaliation claim under the CFRA. (Defs.' MSJ at 20).  Defendants argue Plaintiff's claim fails because she was terminated for the legitimate, nondiscriminatory reason that she failed to respond to numerous letters requesting updates pertaining to her plans to return to work.  (*Id.* at 20).  Plaintiff responds by repeating the elements underlying her claim and the facts she contends support them. (Pl.'s MSJ Opp'n at 28).

The prima facie elements for a CFRA retaliation claim are: (1) the employer was covered by the CFRA; (2) the employee was eligible to take CFRA leave; (3) the employee exercised her right to take leave for a CFRA-protected purpose; and (4) the employee suffered an adverse employment action, such as termination, because she exercised her right to CFRA leave.  *Moore v. Regents of Univ. of Cal.*, 248 Cal.App.4th 216, 248 (2016) (quoting *Faust v. Cal. Portland Cement Co.*, 150 Cal.App.4th 864, 885 (2007)).

The Court applies the burden-shifting scheme articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Moore*, 248 Cal.App.4th at 248, ("[T]he McDonnell Douglas burden shifting analysis applies to retaliation claims

under CFRA."). Under the *McDonnell Douglas* framework, the initial prima facie burden on the plaintiff is light, requiring minimal evidence. *Heard v. Lockheed Missiles & Space Co.*, 44 Cal.App.4th (1996); *Hersant v. Dept. of Social Servs.*, 57 Cal.App.4th 997, 1003 (1997) (generally, an employee only has to offer circumstantial evidence to give rise to a reasonable inference of discrimination). If the plaintiff meets the burden of a prima facie showing, a presumption of discrimination arises, and the burden then shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to raise a genuine issue of fact and to justify the action with a legitimate, nondiscriminatory reason. *Guz v. Bechtel Nat., Inc.*, 24 Cal.4th 317, 355-56 (2000). If the employer meets its burden of proffering a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to prove the employer's proffered reasons are a pretext for discrimination. *Id.* at 356. The *McDonnell Douglas* framework was originally intended for trial, but at summary judgment the trial court's decision "will depend on a number of factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." *Zamora v. Sec. Indus. Specialists, Inc.*, 71 Cal.App.5th 1, 32-33 (2021). Furthermore, employment cases often involve issues of intent and motive, which "are rarely appropriate for disposition on summary judgment[.]" *Id.* at 33 (italics omitted).

Defendants argue they have offered a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has failed to show that reason was a pretext for discrimination. (Defs.' MSJ at 20-22). Defendants claim Plaintiff was terminated because she failed to respond to numerous letters. (*Id.* at 20). Looking to the November 4, 2019, letter informing Plaintiff of her termination, Lashlee also cited: "As of October 21, 2019, you exhausted the full FMLA and general medical leave for which you are eligible[.]" (Lashlee Decl., ¶ 16, Ex. II-P, ECF No. 41-3 at 721). As discussed above, (*see supra* IV.D.1), Plaintiff was not entitled to reinstatement after her statutorily prescribed FMLA leave was exhausted. Therefore, Defendants have met their burden of proffering a legitimate, nondiscriminatory reason for Plaintiff's termination, which shifts the burden

back to Plaintiff to demonstrate that reason is a pretext for discrimination. In her opposition, Plaintiff argues how she has met the elements of her prima facie case but fails to address how Defendant's proffered reasons for her termination may be pretextual.

Therefore, while Plaintiff may have met her initial burden for a prima facie showing of retaliation in violation of the CFRA, she has failed to meet the shifting burden of demonstrating Defendants' proffered reasons for terminating her are pretextual. Under the evidence and argument represented in the motions, Plaintiff has failed to raise a genuine dispute of material fact to survive summary judgment on this claim. Accordingly, Defendants' motion for summary judgment is **granted** as to Plaintiff's Third Cause of Action for retaliation under the CFRA.

### 3. Plaintiff's Fourth Cause of Action

Defendants seek summary judgment on Plaintiff's FEHA discrimination claim. (Defs.' MSJ at 22). Defendants argue Plaintiff's claim fails because, like above, (*see supra* IV.D.2), they proffered a legitimate, nondiscriminatory reason for Plaintiff's termination, which she failed to demonstrate is a pretext for discrimination. Plaintiff contends discrimination claims based on a disability do not require the plaintiff to prove "the employer's adverse employment action was motivated by animosity or ill will against the employee." (Pl.'s MSJ Opp'n at 27).

Courts have held the *McDonnell Douglas* burden-shifting framework does not apply to disability discrimination cases where the plaintiff introduces direct evidence that the adverse employment action was motivated by prohibited reasons. *Compare Wallace v. Cnty. of Stanislaus*, 245 Cal.App.4th 109, 115-23 (2016) (finding direct evidence because the employer incorrectly understood that the plaintiff could not safely perform his job and did not provide any other reasons for the unpaid leave); *Glynn v. Super. Ct.*, 42 Cal.App.5th 47, 51-54 (2019) (holding employer's decision to terminate an employee who could have returned to work with reasonable accommodation was direct evidence of discrimination, even though the employer believed the employee was unable to return to work with reasonable accommodation); *with Zamora*, 71 Cal.App.5th at 37 (finding an employee's

termination based on lack of attendance, and the employer's knowledge of the employee's disability and request for accommodation, not sufficient to be direct evidence of discrimination).

This case falls in line with *Zamora* because an employer terminating an employee who is unable to perform the essential duties of her job, with or without accommodation, is not direct evidence of discrimination. *See Nadaf-Rahrov*, 166 Cal.App.4th at 976; *Hanson v. Lucky Stores, Inc.*, 74 Cal.App.4th 215, 226-27 (1999) ("Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected."). Moreover, similar to *Zamora*, and distinguished by *Wallace* and *Glynn*, Defendants made no erroneous conclusion here about Plaintiff's disability. It is undisputed that, at the time Plaintiff was terminated, on November 4, 2019, she was temporarily totally disabled and unable to perform the essential functions of her job. (AME Report at 210.) To that end, Plaintiff's reliance on *Wallace*, (Pl.'s MSJ at 27), is unpersuasive. Therefore, without direct evidence that Plaintiff's termination was motivated by prohibited reasons, the *McDonnell Douglas* framework applies. In line with the discussion of Defendants' proffered legitimate, nondiscriminatory reasons for termination above, (*see supra* IV.D.2), Plaintiff has failed to raise a genuine dispute of material fact to survive summary judgment on this claim. Accordingly, Defendants' motion for summary judgment is **granted,** and Plaintiff's Fourth Cause of Action for disability discrimination under FEHA is dismissed.

### 4. Plaintiff's Fifth Cause of Action

Defendants seek summary judgment on Plaintiff's claim for failure to provide reasonable accommodation in violation of the FEHA. (Defs.' MSJ at 23). Defendants argue Plaintiff's claim fails for three reasons: "1) Plaintiff cannot identify a reasonable accommodation that was available, 2) Plaintiff refused to engage in the interactive process; and 3) the extended leave CoreCivic provided Plaintiff constitutes a reasonable accommodation." (*Id.*) Plaintiff, on the other hand, argues that extended medical leave is a reasonable accommodation, Defendants are responsible for the breakdown of the

interactive process, and Plaintiff was not reasonably accommodated because she was denied additional leave.  (Pl.'s MSJ Opp'n at 18, 21, 24).

Claims for failure to provide accommodation in violation of the FEHA require a showing that "(1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., she can perform the essential functions of the position with or without an accommodation); and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Cuiellette*, 194 Cal.App.4th at 766 (quoting *Wilson*, 169 Cal.App.4th at 1192).

As discussed above, the Court finds there exist genuine disputes of material facts as to the issues of the existence of a reasonable accommodation, (*see supra* IV.C.5), and whether Defendants failed to accommodate, (*see supra* IV.C.6).  Accordingly, summary judgment is not appropriate on this issue and Defendants' motion is **denied** as to Plaintiff's Fifth Cause of Action for a failure to provide reasonable accommodation under FEHA.

### 5.  Plaintiff's Sixth Cause of Action

Defendants seek summary judgment on Plaintiff's claim for failure to engage in the interactive process in violation of the FEHA.  (Defs.' MSJ at 25).  Defendants argue Plaintiff's claim fails for two reasons: (1) Plaintiff did not request an accommodation for her disability, and (2) Plaintiff was unwilling to engage in the interactive process.  (*Id*. at 26-27).  Plaintiff responds by arguing Defendants are responsible for the breakdown in the interactive process because they failed to respond to the AME report.  (Plaintiff Opp'n at 22-23).

Defendants' duty to engage in the interactive process is discussed above, (*supra* IV.C.3), as is Defendants' actual participation in the process, (*supra* IV.C.4).  Plaintiff's argument hinges on Defendants' failure to respond to the AME report.  However, what Plaintiff fails to acknowledge is that two of the letters she received from Defendants came *after* the AME report was served on Defendants' lawyer, therefore, Defendants did not stop the interactive process.  In fact, the evidence shows that Plaintiff stopped responding, admitting, "I wasn't even reading that stuff anymore because I was under a doctor's care."

(Lewis Depo. at 146:12-15).  Plaintiff willfully stopped reading Defendants' attempts at communication with her.  Despite Plaintiff's admission, Defendants also failed to address the AME report, or the accommodation requested therein, through their letters.  (*See supra* IV.C.4).  Therefore, the Court finds there is a genuine dispute of material fact as to who is responsible for the breakdown of the interactive process.  Accordingly, Defendants' motion for summary judgment, as to Plaintiff's Sixth Cause of Action for failure to engage in the interactive process in violation of the FEHA is **denied.**

### 6.  Plaintiff's Seventh Cause of Action

Defendants seek summary judgment on Plaintiff's claim for failure to prevent discrimination/harassment pursuant to California Government Code Section 12940(k).  (Defs.' MSJ at 28).  Defendants argue that a claim for failure to prevent discrimination is derivative of a claim of discrimination, and therefore, dismissal of the discrimination claim necessitates dismissal of the other.  (*Id.*)  Plaintiff does not specifically address this claim in her opposition.  Defendants provide a string of authority to demonstrate that, when a discrimination claim is dismissed, the derivative claim of failure to prevent discrimination should also be dismissed.  (*See id.* citing *Ward v. Cnty. of Siskiyou*, 816 Fed.App'x 51, 55 (9th Cir. 2020); *Engel v. Time Warner Cable*, No. EDCV 19-047 PSG, 2020 WL 2114933, at *10 (C.D. Cal. Jan. 30, 2020), aff'd, 847 F.App'x 405 (9th Cir. 2021); *Ceja-Corona v. CVS Pharmacy, Inc.*, 664 F. App'x 649, 651 (9th Cir. 2016); *Mack v. Fed. Express Corp.*, No. 2:21-cv-01705-SB-JC, 2022 WL 2102889, at *9 (C.D. Cal. Jan. 7, 2022)).

Here, Plaintiff's Third and Fourth Causes of Action for discrimination and retaliation were dismissed.  (*See supra* IV.D.2-3).  The derivative claim of failure to prevent discrimination/harassment should likewise be dismissed.  Accordingly, Defendants' motion for summary judgment, as to Plaintiff's Seventh Cause of Action is **granted** and the claim for failure to prevent discrimination/harassment pursuant to California Government Code Section 12940(k) is dismissed.

///

///

### 7.  Plaintiff's Eighth Cause of Action

Defendants seek summary judgment on Plaintiff's claim for wrongful termination in violation of public policy.  (Defs.' MSJ at 29).  Defendants argue this claim is derivative of Plaintiff's FMLA, CFRA, and FEHA claims and, because those claims fail, so too should this one.  (*Id.*)  Defendants cite to several cases, among which is *Calderon v. Fresenius USA, Inc.*, No. CV207869PSGJEMX, 2022 WL 3012180, at *17 (C.D. Cal. Feb. 15, 2022), *aff'd sub nom.* No. 22-55305, 2023 WL 4234233 (9th Cir. June 28, 2023), which held that a plaintiff's claim for wrongful termination in violation of public policy fails because the Court finds no underlying statute that was violated.  Plaintiff fails to respond to this issue in her opposition.

Here, Plaintiff's Fifth and Sixth Causes of Action for failure to provide reasonable accommodation and failure to engage in the interactive process, respectively, in violation of the FEHA remain.  (*See supra* IV.D.4).  Accordingly, because a dispute of material fact exists as to Plaintiff's FEHA claim, Defendant's argument is unpersuasive.  Accordingly, Defendants' motion for summary judgment as to Plaintiff's Eighth Cause of Action for wrongful termination in violation of public policy is **denied**.

### 8.  Plaintiff's Request for Punitive Damages

Defendants seek summary judgment on Plaintiff's request for punitive damages arguing Plaintiff cannot show "oppression, fraud or malice."  (Defs.' MSJ at 29).

In causes of action for breach of an obligation that does not arise from contract, a plaintiff may seek punitive damages where "it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(1).  Typically, the question of whether the defendant's conduct supports an award of punitive damages is left for the trier of fact because "the degree of punishment depends on the peculiar circumstances of each case," though the issue can be resolved at summary judgment.  *Johnson & Johnson v. Super. Ct*, 192 Cal.App.4th 757, 762 (2011).  Summary judgment is only proper on the issue of punitive damages "when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or

oppression." *Hoch v. Allied-Signal, Inc.*, 24 Cal.App.4th 48, 60-61 (1994).  As some of Plaintiff's claims survive, the Court finds it would be premature to dismiss her request for punitive damages.  Accordingly, Defendants' motion for summary judgment as to punitive damages is **denied**.

### 9.  Plaintiff's Twelfth Cause of Action

Finally, Defendants seek summary judgment on Plaintiff's claim for unfair business practices in violation of Business and Professions Code Section 17200 et seq.  (Defs.' MSJ at 29).  Defendants argue Plaintiff's claim fails for two reasons: (1) Plaintiff's other claims fail, leaving no statute upon which to base her twelfth claim, and (2) Plaintiff has lost no money upon which to claim restitution.  (*Id*. at 30).  Plaintiff fails to address this claim in her opposition.

Business and Professions Code Section 17200 is part of California's Unfair Competition Law ("UCL").  The UCL prohibits unlawful competition, which it defines as "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The purpose of the UCL is to "protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002).  Section 17204 was amended by Proposition 64 in November of 2004 to require that private standing be limited to "any person who has suffered injury in fact and has lost money or property as a result of the unfair competition."

### i.  What constitutes an "unlawful" business act under the UCL

Defendants' first argue that UCL claims must be based on a violation of statute, and all Plaintiff's statue-based claims should be dismissed on summary judgment.  (Defs.' MSJ at 29).  Defendants further argue any remaining common law claims do not satisfy the "unlawful" prong of the UCL.  (*Id.*)

Plaintiff's Fifth and Sixth Causes of Action for failure to provide reasonable accommodation and failure to engage in the interactive process in violation of the FEHA remain.  Plaintiff's accommodation claim is based on California Government Code Section 12940(m), which holds it is unlawful employment practice "[f]or an employer … covered

by this part to fail to make reasonable accommodation for the known physical … disability of an applicant or employee."  Plaintiff's Sixth Cause of Action is similarly based in statute. *See* 2 Cal. Code Regs. § 11069(a).  Therefore, Plaintiff's UCL claim still incorporates allegations of unlawful business practice based in statute, satisfying the "unlawful" prong of the UCL.

### ii.    *Plaintiff's remedies under the UCL*

Defendants also argue Plaintiff cannot recover restitution under the UCL because she has not lost any money to which she can claim ownership.  (Defs.' MSJ at 30).  Only two forms of relief are available under the UCL: restitution and injunctions.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003).  Therefore, restitution is the only monetary remedy available in a private suit brought under the UCL.  *Clark v. Super. Ct.*, 50 Cal.4th 605, 614.  Restitution means the "return of money or other property obtained through an improper means to the person from whom the property was taken." *Id.* (citing *Kasky*, 27 Cal.4th at 950); *Korea Supply Co.*, 29 Cal.4th at 1149 ("The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.").  The typical method of calculating restitution in a UCL case is the difference between price paid and actual value received, though this is not the only measure.  *See In re Vioxx Class of Cases*, 180 Cal.App.4th 116, 131 (2009).  However, the plaintiff carries the burden of proving "entitlement to an alternative measure of restitution under all the circumstances." *In re Tobacco Cases II*, 240 Cal.App.4th 779, 792 (2015).

In her complaint, Plaintiff claims she is "entitled to equitable and injunctive relief, including full restitution, disgorgement, and/or specific performance of payment of all wages that have been unlawfully withheld from Plaintiff, and enjoinment of Defendant[s] to cease and desist from engaging in the practices described [in the Complaint]," with respect to her UCL claim.  (Compl. ¶ 144).  Plaintiff otherwise fails to address her UCL claim, let alone restitution or injunctive relief, in her submissions.  Plaintiff fails to carry her burden in demonstrating restitution for money lost to which she can claim ownership is appropriate under the instant facts.  Accordingly, Defendants' motion for summary

judgment, with respect to Plaintiff's Twelfth Cause of Action under the UCL is **granted**, and the claim is dismissed.

## V.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Plaintiff's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.  (ECF No. 40).

2. Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.  (ECF No. 41).

3. Plaintiff's claims for interference in violation of the FMLA, interference in violation of the CFRA, retaliation in violation of the CFRA, disability discrimination in violation of the FEHA, and failure to prevent unlawful discrimination/retaliation are **DISMISSED**.

**IT IS SO ORDERED.**

DATED: March 28, 2024

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE