UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVA LEWIS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CORECIVIC OF TENNESSEE, LLC, a Tennessee limited liability company doing business in the state of California; CORECIVIC, LLC, a Delaware limited liability company doing business in the state of California; CORECIVIC, INC., a Maryland corporation doing business in the state of California; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.: 3:21-cv-01385-JAH-BJC<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br>**[ECF No. 65]** |

## I.   INTRODUCTION

Pending before the Court is Defendants CoreCivic of Tennessee, LLC, CoreCivic, LLC, and CoreCivic, Inc. (collectively, "Defendants" or "CoreCivic") Motion for Reconsideration, (ECF No. 65-1, "Motion"), of the Court's March 28, 2024, Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment, (ECF No. 61, "SJ Order"). Plaintiff Marva Lewis ("Plaintiff") filed an opposition, (ECF No. 72, "Opp'n"), and Defendants subsequently filed a reply, (ECF No. 73, "Reply").

Upon careful consideration of the Parties' arguments and the relevant law, and for the reasons set forth below, the Court **DENIES** Defendants' Motion for Reconsideration.

## II.     BACKGROUND

In July and August of 2023, the Parties filed cross-motions for summary judgment. ECF Nos. 40-1, 41-1. Both Parties filed an opposition and a reply. ECF Nos. 44, 45, 53, 54. After careful consideration of the motions, subsequent briefing, and relevant law, the Court entered its SJ Order on March 28, 2024. The SJ Order contains a thorough recitation of the facts and procedural history of this case, which is hereby incorporated by reference. *See* SJ Order. Pertinent for purposes of the pending Motion, the SJ Order granted the following parts of Plaintiff's Partial Motion for Summary Judgment (ECF No. 40):

1. The Court found Plaintiff requested an accommodation for her disability under the Fair Employment and Housing Act ("FEHA"). SJ Order at 29.[1]
2. The Court found Defendants had an obligation to engage in a timely, good faith interactive process in response to Plaintiff's request for accommodation. SJ Order at 30.

Both requests were granted based on the Court's finding that knowledge of an Agreed Medical Evaluation (ECF No. 40-2 at 210, "AME Report") should be imputed to Defendants via their agent, Stacy Bickler (Defendants' workers' compensation attorney), who was served with the AME Report. SJ Order at 25.

## III.     LEGAL STANDARD

The Federal Rules of Civil Procedure do not expressly create a procedural avenue for motions for reconsideration, but the basis for these motions can be construed from Rules 54(b), 59(e), and 60(b). *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001) (holding, so long as a district court has jurisdiction over the order, it may reconsider its own interlocutory order under Rule 54(b)); *Byers v. United*

---

[1] Unless otherwise stated, page numbers referenced herein refer to page numbers generated by the CM/ECF system.

*States Navy*, 12 F.3d 1105 (9th Cir. 1993) (explaining district courts may reconsider a grant of summary judgment under Rules 59(e) and 60(b)). Additionally, district courts have an "inherent procedural power" to reconsider an interlocutory order. *City of Los Angeles, Harbor Div.*, 254 F.3d at 885. However, Rules 59 and 60 only apply to final judgments and appealable interlocutory orders. *See Balla v. Idaho State Bd. of Corrs.*, 869 F.2d 461, 466–67 (9th Cir. 1989); *see also* FED. R. CIV. PROC. 59(e), 60(b). Rule 54(b), on the other hand, allows the district court to reconsider an interlocutory order "that adjudicates fewer than all of the claims . . . at any time before entry of judgment adjudicating all of the claims." Rule 54 provides no standard of review for the district court, but many courts apply the same standards used under Rules 59(e) and 60(b). *See Hansen v. Schubert*, 459 F.Supp.2d 973, 998 n.5 (E.D. Cal. 2006) ("While the standards applicable to motions for reconsideration of final judgments or orders under Rules 59(e) (final judgments) and 60(b) (final judgments and orders) technically do not delimit the court's inherent discretion to reconsider interlocutory orders, the court nonetheless finds them to be helpful guides to the exercise [of] its discretion"); *see also Wright v. Old Gringo, Inc.*, No. 3:17-cv-1996, 2018 WL 7286506, at *1 (S.D. Cal. Oct. 31, 2018) (applying the standard for motions for reconsideration under Rules 59(e) and 60(b) when reconsidering an order under Rule 54(b)); *Victorino v. FCA US LLC*, No. 16-cv-1617, 2018 WL 2149223, at *2 (S.D. Cal. May 10, 2018) (same).

In the Southern District of California, motions for reconsideration are directly addressed by Civil Local Rule 7.1(i), which states:

> Whenever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part, or has been granted conditionally or on terms, and a subsequent motion or application or petition is made for the same relief in whole or in part upon the same or any alleged different state of facts, it will be the continuing duty of each party and attorney seeking such relief to present to the judge to whom any subsequent application is made an affidavit of a party or witness or certified statement of an attorney setting forth the material facts and circumstances surrounding each prior application,

>including inter alia: (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application.

CivLR 7.1(i)(1).[2] Rule 59(e) grants district courts the authority to reconsider and amend a previous order, but "the rule offers an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 59.30[4] (3d ed. 2000)). In the interests of judicial economy and the finality of judgments, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Carroll*, 342 F.3d at 945 (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)); *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983) (holding there exists a "compelling interest in the finality of judgments which should not lightly be disregarded").

Additionally, a motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona*, 229 F.3d at 890 (citation omitted). Where a motion for reconsideration claims the district court clearly erred, "[m]ere doubts or disagreement about the wisdom of a prior decision . . . will not suffice . . . . To be clearly erroneous, a decision must [be] more than just maybe or probably wrong; it must be dead wrong." *A-Tek Mech., Inc. v. KHW Servs., Inc.*, No. 3:21-cv-01974, 2022 WL 18635745, at *2 (S.D. Cal. Oct. 13, 2022). Therefore, "[a] party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments

---

[2] Plaintiff argues Civil Local Rule 7.1(i)(1) requires all motions for reconsideration to allege new facts or different circumstances but fails to cite any cases applying this interpretation. Opp'n at 9. On the other hand, Defendants outline a wealth of cases from this District allowing motions for reconsideration based upon clear error. Reply at 6-7. Accordingly, the Court finds the Motion is procedurally sufficient under Local Rules.

considered by the court before rendering its original decision fails to carry the moving party's burden[.]" *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001) (internal quotations omitted). The district courts have discretion to grant or deny a motion for reconsideration. *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

Defendants do not claim any new facts or circumstances but rather bring the pending motion for reconsideration based on clear error. Motion at 5. Defendants' argument is threefold: (1) Defendants claim the Court failed to analyze the "scope of Bickler's agency and thus what knowledge of his could be imputed to Defendants" (Motion at 5); (2) Defendants claim in the alternative that, even if knowledge can be imputed to Defendants, that knowledge should be imputed to Defendants' workers' compensation ("WC") department and not to its human resources department (Reply at 11 n.2); and, (3) Defendants claim the Court improperly applied Rule 56(c) and viewed the evidence in the light most favorable to the moving party (Motion at 5). The Court will discuss all three arguments in turn.

## IV. DISCUSSION

**A. The Scope of Stacy Bickler's Agency as CoreCivic's Attorney**

Defendants claim the Court failed to apply the standard established in *Triple A. Mgmt. Co. v. Frisone*, 69 Cal.App.4th 520 (1999) ("*Triple A*"), by "fail[ing] to include in [its] analysis the required element of scope of agency." Motion at 11. Defendants argue Bickler's retention was "limited to the defense of Plaintiff's WC claim," therefore, he would "have no reason to provide the AME report to CoreCivic's human resources staff" and "would have no obligation to provide it as a possible request for accommodation under FEHA or even interpret it as such." Motion at 13 (footnote omitted). On the other hand, Plaintiff argues the limitation of Bickler's representation to the WC matter is "irrelevant" because he received the AME Report "within the scope of his representation in the WC matter[.]" Opp'n at 13.

An agent is defined by California law as "one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295. An agent's knowledge is imputed to a principal when that knowledge "can reasonably be said to be present in the mind of the agent while acting for the principal." *Columbia Pictures Corp. v. DeToth*, 87 Cal.App.2d 620, 631 (1948). This rule is based on the principle that "the agent has a legal duty to disclose information obtained in the course of the agency and material to the subject matter of the agency, and the agent will be presumed to have fulfilled this duty." *Triple A*, 69 Cal.App.4th at 534-35. Even when the agent fails to communicate such knowledge to the principal, this rule is still effective. *Columbia Pictures Corp.*, 87 Cal.App.2d at 630 (an "agent may have been guilty of a breach of duty to his principal, yet the knowledge has the same effect as to third persons as though [the agent's] duty had been faithfully performed").

Additionally, the law imposes specific responsibilities on the agent when that agent is the principal's attorney. For example, the rules of professional conduct require that a lawyer " . . . keep the client reasonably informed about significant developments relating to the representation[.]" CAL. R. PROF. CONDUCT 1.4(a)(3). These duties to inform and advise the client are not strictly limited by the specific matter for which the attorney was retained. *See Janik v. Rudy, Exelrod, & Zieff*, 119 Cal.App.4th 930, 940 (2004) (an "attorney who undertakes one matter on behalf of a client owes that client the duty to at least consider and advise the client if there are apparent related matters that the client is overlooking and that should be pursued to avoid prejudicing the client's interests"). The California Fifth District Court of Appeal explains:

> [E]ven when a retention is expressly limited, the attorney may still have a duty to alert the client to legal problems which are reasonably apparent, *even though they fall outside the scope of the retention*. The rationale is that, as between the lay client and the attorney, the latter is more qualified to recognize and analyze the client's legal needs. The attorney need not represent the client on such matters. Nevertheless, the attorney should inform the client of the limitations of the attorney's representation and of the possible need for other counsel.

*Nichols v. Keller*, 15 Cal.App.4th 1672, 1684 (1993) (emphasis added) (whether defendant's attorney had a duty to advise the plaintiff of possible third-party claims was a triable issue where defendant's attorney asserted their representation was limited to the plaintiff's WC claim).

In support of their motion, Defendants rely on *Triple A* to assert Bickler's knowledge of the AME Report must have been "obtained in the course of the agency and material to the subject matter of the agency" for the Court to properly impute that knowledge to Defendants. *Triple A*, 69 Cal.App.4th at 534. *Triple A* concerns a dispute amongst several creditors regarding the priority of their respective deeds of trust against a 20.4-acre parcel of land. *Id.* at 524-27. During a bench trial, the court determined that knowledge held by Stewart, a title company employed to handle the escrow for the sale of the parcel between Triple A and Greenwood, was to be imputed on Frisone, the creditor of a subsequent purchaser of the parcel. *Id.* at 533. The Fifth District Court of Appeal upheld the trial court's conclusion but found the "parameters" of the agency relationship to be narrower than the trial court described. *Id.*

In *Triple A*, the court rejected Triple A's argument that the title company's knowledge obtained during one escrow could be imputed to a principal that hired it for a separate escrow. *Id.* at 534. In rejecting Triple A's argument, the Court of Appeal relies on general legal principles for imputing knowledge from an agent to a principal, stating: "[t]he basis for imputing knowledge to the principal is that the agent has a legal duty to disclose information obtained in the course of the agency and material to the subject matter of the agency, and the agent will be presumed to have fulfilled this duty." *Id.* at 534-35. The court then clarified, "[t]he scope of the imputation of knowledge is directly related to the scope of the duty arising from the agency agreement; it has nothing to do with whether the agent actually has the information in question or has it only constructively, or whether it is practical to expect the agent to remember something that happened months ago." *Id.* at 535 (citations omitted). However, the Court of Appeal found that the title company's knowledge had, in fact, been obtained "in the course of the agency" during the second

escrow. *Id.* Therefore, it was proper to impute the title company's knowledge onto the principal secured party. *Id.*

Unlike *Triple A*, in the present case there are no issues concerning separate escrows involving separate parties. Instead, here, as Defendants illustrate in their motion, "all agree" that Bickler was retained to represent CoreCivic in Plaintiff's WC case. Motion at 12-13; Opp'n at 13. Indeed, Plaintiff's WC case and her request for accommodation involve the same parties (Marva Lewis and CoreCivic) and arise from the same circumstances (Plaintiff's need for leave as a result of her medical condition). ECF No. 40-3 ("Plaintiff's Decl.") ¶¶ 3-13; ECF No. 41-3 ("Lashlee Decl.") at 639-40. Furthermore, the record depicts Bickler requested the AME Report and was served with it *because* of his representation of CoreCivic in Plaintiff's case. This is demonstrated by the fact that Bickler sent a letter to Plaintiff's WC attorney on June 27, 2019, asking to be advised on Ms. Lewis' "current complaints," "current treating physicians," and "current employment status"—precisely the kind of information contained within the AME Report. ECF No. 40-2 ("Letter 1") at 204. Bickler writes in his letter, "Please consider this letter a continuing demand for service of *all medical records you receive regarding this claim*. I would also appreciate the names of *any and all physicians* with whom your client has treated relative to *any previous injury(ies) or medical condition(s).*" *Id.* (emphasis added). Bickler also asserts, "Pursuant to Labor Code §4663(d), demand is hereby made that the applicant disclose all previous permanent disabilities and physical impairments *even if unrelated to the present injury* claim to this office forthwith." *Id.* at 205 (emphasis added). Finally, and most notably, as part of his representation of CoreCivic, Bickler personally scheduled Plaintiff's evaluation with Dr. Zink, upon which the AME Report was based. ECF No. 40-2 ("Letter 2") at 207.

The language of the AME Report also suggests it was created, at least in part, for Plaintiff's WC case by explicitly referring to WC on two occasions. First, Dr. Zink writes, " . . . I note my understanding is that **Worker's Compensation** [sic] case law indicates that psychologists cannot determine whether an action is a good faith, lawful, non-

discriminatory personnel action." AME Report at 210 (emphasis added). In the second instance, Dr. Zink opines "that Marva Lewis' Psychological Disability/Disorder is not yet Permanent and Stationary for the purpose of **Workers' Compensation** rating." *Id.* (emphasis added). These references to WC demonstrate the AME Report was created in connection with Plaintiff's WC claim. This language, along with the fact Bickler scheduled Plaintiff's evaluation with Dr. Zink, place the AME Report unequivocally within the scope of Bickler's representation as CoreCivic's attorney for Plaintiff's WC case. In fact, Defendants refer to the AME Report as a "workers compensation evaluation" in their motion for summary judgment. ECF No. 41-1 ("Def's MSJ") at 21 n.6.

Defendants also rely on *In re Perle* in support of their assertion that a lawyer's representation of a client is "subject-matter specific." 725 F.3d 1023, 1027 (9th Cir. 2013). There, a lawyer represented a New York securities dealer, Fiero Brothers, which held a $350,000 arbitration award against Cery Perle. *Id.* at 1025. However, in 2002, Perle filed for bankruptcy and received a general discharge of his debts. *Id.* at 1026. More than four years later, Fiero Brothers filed a motion to reopen Perle's bankruptcy to challenge the dischargeability of the arbitration award. *Id.* Whether the Fiero Brothers' motion was timely depended on whether it had "notice or actual knowledge" of the bankruptcy to file a timely complaint. *Id.* at 1027. Perle argued that Fiero Brothers' attorney, Russo, was aware of the bankruptcy and Russo's knowledge should be imputed to Fiero Brothers. *Id.* However, the Ninth Circuit explains Russo's representation of Fiero Brothers terminated in that dispute more than three years before Perle filed for bankruptcy. *Id.* In fact, "Russo learned of Perle's bankruptcy on behalf of a different client." *Id.* at 1028. The Ninth Circuit based its holding, in part, on the rule that a lawyer's representation of a client is "subject-matter specific," and that no case law was represented that "imputes to a client knowledge that his lawyer gained while representing a *different* client." *Id.* (italics in original).

Here, unlike the lawyer in *In re Perle*, Bickler was served with the AME Report while representing Defendants—the principal to whom knowledge is imputed—and in

connection with that representation, as explained *supra*. Additionally, here, there is no temporal issue. The service of the AME Report and request for accommodation occurred contemporaneously with Plaintiff's ongoing WC claim.

Defendants must demonstrate the Court clearly erred to succeed in their Motion. While Defendants are correct in asserting knowledge imputed from an agent to a principal must be obtained within the scope of the agency and must be material to the subject matter of the agency, Defendants have failed to demonstrate that the AME Report is *clearly* outside the scope of Bickler's representation. To the contrary, the evidence, as explained *supra*, points to the opposite conclusion: The AME Report was requested by Bickler in his capacity as Defendants' attorney and it was served on him because he represented Defendants in Plaintiff's WC case. Accordingly, Defendants' first argument fails to demonstrate clear error in the Court's SJ Order.

**B. The Scope of Imputing Knowledge to a Corporation**

Defendants' second argument is raised in their Reply, stating: "Even assuming *arguendo* that Bickler's knowledge of Plaintiff's AME report could be imputed to CoreCivic within the scope of his representation as a workers compensation [sic] attorney, that imputation would be limited to CoreCivic's workers compensation [sic] department without extending to the human resources department that handled Plaintiff's accommodation process." Reply at 11 n.2 (italics in original).[3]

---

[3] Generally, "[A]rguments raised for the first time in a reply brief are waived." *Autotel v. Nevada Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012); *Lentini v. California Ctr. for the Arts, Escondido,* 370 F.3d 837, 843 n.6 (9th Cir. 2004) (refusing to entertain an argument alleged for the first time in a reply brief because the opposing party "ha[d] not been given the opportunity to respond"). Defendants' argument that knowledge imputed to one department within a corporation cannot be imputed to other departments within the same corporation was alluded to, but not explicitly stated, in its Motion. *See* Motion at 7. Nevertheless, for the reasons stated hereinafter, even if the argument was properly raised, the Court finds it unpersuasive.

In support of this argument, Defendants' only cited authority is *Hoskins v. BP Prod. N. Am. Inc.*, No. 2:13-cv-0574, 2014 WL 116280 (C.D. Cal. Jan 9, 2014) ("*Hoskins*"). In *Hoskins*, an employer required an employee on medical leave to submit a doctor's note by a certain date. *Id.* at *2. The employee's doctor's receptionist attempted to fax the note to the employer the day before the deadline, but the fax was sent to the wrong number, and the employer never received the note. *Id.* However, the employee argued, on motion for summary judgment, that the employer should have examined reports from a different doctor, which were previously provided to the employer's WC insurer. *Id.* at *9. The *Hoskins* court rejected this argument, explaining the employer had the right under California law to obtain an employee's medical information from a third-party insurer, but just because the employer had the "ability to examine [the medical reports] does not mean [the employer] had a duty to do so." *Id.*

*Hoskins* is factually distinct from the instant case because it does not address imputation of knowledge via an agency relationship. There, the employee's argument attempted to impose an affirmative duty on the employer to obtain medical records. Whereas, here, the question is whether knowledge possessed by the Defendants' agent should be imputed to Defendants. *Hoskins* also does not support Defendants' argument that knowledge of the AME Report cannot be imputed to Defendants' human resources department, even if it can be imputed to its WC department. Instead, *Hoskins* addresses the relationship between a company and its WC insurer, not various departments within the same corporation.

Finally, Defendants' argument that knowledge within one part of a corporation, or with some of its agents, cannot be imputed to other agents within the corporation fails because it would allow corporations to avoid liability by employing multiple agents. *See Sanders v. Magill*, 9 Cal.2d 145, 153-54 (1937) (holding this type of argument "would permit a corporation, by not letting its right hand know what is in its left hand, to mislead and deceive those who are dealing with it in perfectly good faith"). Accordingly, the Court

finds no clear error in its prior decision to impute knowledge of the AME Report to CoreCivic.

**C. Factual Deference to the Non-Moving Party on Motion for Summary Judgment**

Defendants' third argument for reconsideration asserts the Court failed to properly apply the legal standard for motions for summary judgment as set forth in Rule 56(c), arguing the Court "viewed the relevant facts for purposes of Plaintiff's motion in the light most favorable to the Plaintiff." Motion at 15. In support, Defendants repeat their first argument, claiming the Court misapplied the standard for imputing knowledge upon a principal as set forth in *Triple A*. *Id.* at 16. Defendants also distinguish *Diaz v. Federal Express*, No. CV 03-04765, 2004 WL 5402500 (C.D. Cal. Aug 18, 2004) ("*Diaz*"), arguing *Diaz* properly imputed knowledge on the *non-moving* party because it was required to view the facts in the light most favorable to the non-moving party, whereas here the *moving* party benefitted from the Court imputing knowledge. Motion at 14.

Summary judgment is limited to cases where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). As Defendants assert, "the inference to be drawn from the underlying facts contained in such materials [attached to a motion for summary judgment] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment should be denied if any issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Furthermore, it is not the role of the court to weigh evidence, determine credibility, and draw inferences from facts. *Id.* at 155. When a court reviews cross-motions for summary judgment, as was the case here, "each motion must be considered on its merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citations and quotation marks omitted).

Defendants highlight *Diaz* as an example of when the factual deference demanded by Rule 56(c) was properly applied to the issue of imputing knowledge from an agent to a principal. Motion at 14. In *Diaz*, several disputes of material fact existed. First, the agents

in that case were prohibited by California law from disclosing medical information about an employee unless the information fell under certain exceptions, such as medical information that is necessary for the employer to modify the employee's duties. *Diaz*, 2004 WL 5402500, at *10. Whether the medical report in that case fell under an exception was a question of fact. *Id.* at *11. Second, the question of whether the agents had a duty to disclose the medical report hinged on whether the exercise of ordinary care would have required them to do so in light of the plaintiff's workers' compensation claim having already been deemed not compensable and the plaintiff not requesting a job modification. *Id.* at *13. Because the non-moving party argued knowledge should be imputed in *Diaz*, the court construed the facts in favor of imputation despite lingering questions. *Id.*

Unlike the factual ambiguity in *Diaz*, here the Court's decision to impute Bickler's knowledge of the AME Report to Defendants was based on *undisputed*, *unambiguous* facts.[4] In its SJ Order, the Court cites to a letter addressed from Bickler to Plaintiff's WC attorney, in which Bickler explains he was "retained by CoreCivic, to provide a defense in [Plaintiff's] workers' compensation action." SJ Order at 24. The Court also cites to Bickler's declaration, in which he affirms that he represented Defendants in Plaintiff's WC case. *Id.* at 25. As evidence of Bickler's actual or constructive knowledge of the AME Report, the Court cites to the declaration of service attached to the report (naming Bickler as a recipient) and Bickler's own declaration, in which *he affirms his office received the report*. *Id.*

---

[4] In her Motion for Partial Summary Judgment, Plaintiff also argued knowledge of the AME Report could be imputed to Defendants via CorVel (Defendants' third-party WC claims administrator). ECF No. 40-1 at 22. However, applying the facts in the light most favorable to the non-moving party, the Court refused to impute knowledge of the AME Report to Defendants via CorVel because, unlike Defendants' relationship with Bickler, "[n]o evidence [was] introduced that definitely establishe[d] in any detail the relationship between Defendants and CorVel, nor the extent of CorVel's authority and duties." SJ Order at 24.

The evidence presented to the Court on the Parties' cross-motions for summary judgment, when construed in the light most favorable to Defendants, still leaves the Court with a number of unavoidable facts in favor of imputing knowledge: (1) Bickler represented Defendants in Plaintiff's WC matter (Letter 1 at 204; ECF No. 44-1 ("Bickler Decl.") at 900); (2) Bickler requested all of Plaintiff's medical records pertaining to her WC claim from Plaintiff's WC attorney (Letter 1 at 204); (3) Bickler personally scheduled Plaintiff's evaluation with Dr. Zink, which is the subject of the AME Report (Letter 2 at 207); (4) the AME Report expressly refers to Plaintiff's WC case (AME Report at 210); (5) Bickler was served with the AME Report because he represented Defendants in Plaintiff's WC case (AME Report at 213; Bickler Decl. ¶ 3; Letter 1; Letter 2); and (6) Plaintiff's WC case and her request for additional leave as an accommodation pertain to the same medical condition and circumstances (Lashlee Decl. ¶¶ 13-14).

In a last-ditch effort, Defendants argue a more robust discussion of the scope of Bickler's agency would have precluded the Court from imputing knowledge to Defendants in light of Rule 56(c)'s standard of factual deference to the nonmoving party. Motion at 16. But, even when taking Defendants' argument at face value—that Bickler's representation was limited to Plaintiff's WC claim—the evidence clearly demonstrates the AME Report falls within that representation. As explained *supra*, agency law dictates that this knowledge, obtained within the scope and as a result of Bickler's representation, is imputed to Defendants. Defendants fail to demonstrate the Court clearly erred in its application of the Rule 56(c) standard.

///
///
///
///
///
///
///

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED Defendants' Motion for Reconsideration is **DENIED**.

**IT IS SO ORDERED.**

DATED: November 8, 2024

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE